Texas Mexican Railway Company v. Samuel M. Jarvis et al.

No. 2400.

1. **Suit Against the State.**—That a State can not be sued by a private person without its consent is well settled, and when such consent is given and a limitation placed on the right to bring such action and upon the power of the court to hear and determine it, if that limitation is one of the conditions or limitations in the law giving the consent, then the jurisdiction of the court ceases when that time has elapsed.

2. **Statutes Construed.**—The purpose of the Act of February 11, 1860, was to confer on the District Courts held within the boundaries named, jurisdiction to investigate any claim against the State for land which had its origin prior to December 19, 1836, and to confirm the claims when found perfect, etc. Its duration was fixed at three years. The act was amended January 11, 1862, so as to extend it until February 11, 1865, and no longer. August 15, 1870, an act passed for same purpose but fixing the venue in Travis County. *Held,* a suit in Webb County for such relief, instituted and determined in 1872, was without jurisdiction and affected no rights.

3. **Same—Special Jurisdiction.**—The jurisdiction conferred on District Courts held within the boundaries fixed in the Act of February 11, 1860, was not within the general jurisdiction conferred on District Courts, but was special in its nature and existed solely by reason of the act which conferred it.

4. **Same—Limitation of Existence of Right to Sue.**—The act in question did not simply provide within what time actions might be brought, but with its amendment fixed a period after which it should cease to be operative. It presents a case in which the jurisdiction of the courts ceased stronger than in cases in which a statute conferring jurisdiction is subsequently repealed.

5. **Repeal of Statute.**—The repeal of a statute conferring jurisdiction divests the courts of the power to hear and determine pending cases affected by such statutes.

6. **Effect of Judgment Under Act of February 11, 1860.**—Ruggles sued under the Act of February 11, 1860. The case was tried and the grant confirmed save as to a tract of six leagues fronting on the Rio Grande, recited as having been expropriated (or condemned) by the Spanish authorities for the use of the town of Palafox, about to be established. This settled the title as between Ruggles and the State as to that recovered and that lost by the plaintiff Ruggles. ·

7. **Legislative Grant.**—It appeared that within the boundaries of the town Palafox four porcions had been alloted and granted to settlers, one porcion to Joaquin Galan, the original grantee of the entire tract which had been claimed by Ruggles. This grant to Galan of one porcion was confirmed by act of Legislature in 1852, but such legislation can not be regarded as evidence of a legislative recognition of the original limits of the grant as owned by Galan, but its construction would be against such assumption.

8.   **Mandamus.**—A holder of a land certificate desiring relief from the courts by mandamus to compel a surveyor to make surveys pointed out must clearly show his legal right to have the surveys made, otherwise the court can not compel the surveyor to perform the service.

9.   **Same.**—Mandamus was sought to compel the survey of a described tract, it appearing that within the tract lie lands titles to which were confirmed by the Act of February 10, 1852.   The owner of these lands was not before the court.   *Held,* that under such facts the writ of mandamus could not issue to survey the whole.

10.   **Same.**—If any part of what is commanded by a peremptory mandamus goes beyond the legal obligation the whole must be set aside.

APPEAL from Webb.    Tried below before Hon. J. C. Russell.
The opinion contains a statement.

*Thomas W. Dodd* and *B. Coopwood,* for appellant.—1.    The court erred in not holding as matter of law the judgment in favor of Daniel Ruggles v. The State of Texas, of date March 13, 1872, to be void in so far as it affected the Palafox tract of land.    To give any binding effect to a judgment of a court it must have jurisdiction of the person of the defendant and of the cause or subject matter; and the want of jurisdiction makes the judgment utterly void and unavailable for any purpose.    McCoy v. Crawford, 9 Texas, 353; Simpson v. Trimble, 44 Texas, 310; Thouvenin v. Rodrigues, 24 Texas, 468; Witt v. Kaufman, 25 Texas Supp., 384.

2.    When the judgment of 1862 was entered and motion for new trial overruled, and the term of court expired at which such judgment was rendered, the power and authority of said court over said judgment ceased until it was brought into existence again, within the time prescribed by law, by a bill or petition for review in the nature of an original proceeding, and then could only be exercised after the adverse party had been duly served with process, or in person voluntarily appeared, or in some of the modes known to law accepted service and waived the issue of process.    Pasch. Dig., arts. 1488, 1473; Milam County v. Robertson, 47 Texas, 231; Freem. on Judg., sec. 96.

3.    The statute giving the District Court of Webb County jurisdiction on proper showing to confirm certain titles to land within a certain territory having expired by its own limitation, the said court could not by a proceeding in the nature of an original proceeding revise or vacate a judgment rendered by it under said law.    Cool. Const. Lim., 5 ed., p. 493.

4.    A State can not be sued in her own courts without her own consent, and then only in the manner indicated by that consent.    24 Texas, 317; 22 Texas, 83; 1 Texas, 764.

5.    Actions for a new trial after the term at which the judgment is rendered are and must be tried as original suits.    Sayles' Prac. and Plead., sec. 741, and the following cases there cited: 46 Texas, 485; 8

Texas, 341; 12 Texas, 180; 13 Texas, 431; 13 Texas, 516; 17 Texas, 107; 18 Texas, 125; 20 Texas, 572; 21 Texas, 171, 637; 22 Texas, 245; 23 Texas, 165; 24 Texas, 534; 26 Texas, 87; 27 Texas, 370; 29 Texas, 6; 30 Texas, 104; 33 Texas, 426; 35 Texas, 375; 42 Texas, 256.

6. The District Court of Webb County had no power in 1872 to review or annul its own final judgment rendered in January, 1862, for error of fact or law, even if the law of 1860 had not been repealed nor limited or restricted by its own terms. Libbold v. United States, 12 Pet., 488–491; Medford v. Dorsey, 2 Ct. App. C. C., 433; Bruch v. Robinson, 3 McLane, 254.

*Thos. W. Dodd* and *B. Coopwood & Son* also filed written arguments.

*W. Showalter, J. O. Nicholson,* and *McLane & Atlee,* for appellees. 1. The finding of the court, that the Legislature of the State of Texas, by Act of February 10, 1852, which took effect April 17, 1852, recognized the Joaquin Galan grant by confirming a portion thereof to his heirs and assigns, is not only supported by the agreed statement of facts in the case, but the court took judicial knowledge thereof as a fact in the political history of the country and also by virtue of said Act of February 10, 1852. Pasch. Dig., art. 4461; Magee v. Chadoin, 30 Texas, 658; Goldsmith v. Herndon, 33 Texas, 708, 709; Williamson v. Simpson, 16 Texas, 436, 437; Watrous v. McGrew, 16 Texas, 512, 513; Kilpatrick v. Sisneros, 23 Texas, 135, 136; Holley v. Holley, 12 Am. Dec., 342; 65 Am. Dec., 528.

2. The court was bound to take judicial knowledge of the historical fact of the expropriation of the land involved in this suit by the former government of the country, about the year 1810, and of the extent thereof and of the division of the same into tracts in the shape of porcions and donations of the same to the original settlers of the town of Palafox and its jurisdiction. And before a reunion of the same with the public domain could take place a judicial inquiry should have been instituted and a forfeiture of the same judicially declared. Const., art. 14, sec. 2; Rev. Stats., art. 3977; Summers v. Davis, 49 Texas, 541–545; Trueheart v. Babcock, 51 Texas, 177.

3. The Act of the Legislature of the State of Texas of February 10, 1852, in relinquishing all her right and interest in three porcions in jurisdiction of Palafox to Antonio Guerra, and one porcion in jurisdiction of Palafox to heirs and assigns of Joaquin Galan, in Webb County, was not only a grant of the fee in said four porcions to said parties, but it was a legislative acknowledgment and notice to the world of the expropriation by a former government of the lands involved in this suit for the establishment of the town of Palafox and its corresponding ejidos and jurisdiction, and that said lands within said jurisdiction were

divided into tracts in the shape of porcions and donated or appropria-
ted to the original settlers, and that the same constitutes no part of the
vacant and unappropriated public domain of the State. Brownsville
v. Basse, 36 Texas, 500, 501; United States v. Repeutiquy, 5 Wall, 267,
268; Cavazos v. Trevino, 35 Texas, 164; City of Laredo v. MacDonnell,
52 Texas, 522.

4. The District Court of Webb County had the power upon a proper
showing to entertain the petition of Daniel Ruggles, filed after the term
at which the judgment was rendered, to set aside and vacate the judg-
ment of January 8, 1862, and to grant a rehearing upon the merits of
the case. Overton v. Blum, 50 Texas, 423, 424; Taylor, Knapp & Co.
v. Fore, 42 Texas, 256–258; Roller v. Wooldridge, 46 Texas, 493–495;
Gross v. McClaran, 8 Texas, 344; Goss v. McClaren, 17 Texas, 115, 116;
Spencer v. Kinnard, 12 Texas, 187; Vandeman v. Edwards, 21 Texas,
740; Wanslow v. Caperton, 18 Texas, 132, 133; Cook v. De la Garza,
13 Texas, 444; Seguin v. Maverick, 24 Texas, 535, 536; Reynolds v.
Stanberry & Burch, 55 Am. Dec., 460–464; Keaton v. Banks, 51 Am.
Dec., 393, 394; Town v. White, 42 Iowa, 608; Bond v. Epley, 48 Iowa,
600; Loomis v. Rice, 37 Wis., 262; Spofford v. Janesville, 15 Wis., 477;
Williams v. Beasley, 13 Ire. L., 114; Dick v. McLaren, 63 N. C., 186;
Freem. on Judg., secs. 96, 98, 100, 101, 105–108, 110, 111a, 112–114;
2 Pom. Eq. Juris., secs. 836, 842, 856.

5. The suit for the confirmation of the Palafox tract having been in-
stituted in the District Court of Webb County under the Act of Febru-
ary 11, 1860, jurisdiction rightfully attached to said court, and was
properly retained until the final disposition of the case by the judgment
of March 13, 1872. Gen. Laws 1860, 109; Gen. Laws 1870, 203, 204;
Kennedy v. Jarvis, 6 Texas Law Rev., 468, 469; Delafield v. Illinois,
2 Hill, 161; Delafield v. Illinois, 26 Wend., 209.

See cases under the Act of 1870, tried below years after the act had
expired by its own limitation. The Supreme Court entertained jurisdic-
tion on appeal, reversing and remanding many of them for retrial in
the court below. State v. Cardinas, 47 Texas, 294; State v. Cuellar,
47 Texas, 306; Villareal v. State, 47 Texas, 320; State v. Bustamente,
47 Texas, 322; State v. Vela, 47 Texas, 326. And so in the case of
Fuentes v. State, after being reversed in 1877, was retried in the court
below in 1879.

6. The evidence in the case showing that the land upon which ap-
pellant sought to have its land certificates located was titled land, equit-
ably owned under color of title from the sovereignty of the State, evi-
dence of the appropriation of which was on the county records of the
county where the lands lie and in the General Land Office, and that the
appropriation was also evidenced by the occupation of the same by the
owners, we therefore insist that the court rightfully refused the writ

of mandamus.  Const., art. 14, sec. 2;  Gen. Laws 1881, 105;  Rev. Stats., art. 3977;  Summers v. Davis, 49 Texas, 551–555;  Trueheart v. Babcock, 51 Texas, 177;  Kennedy v. Jarvis, 6 Texas Law Rev., 468, 469;  Hanrick v. Dodd, 62 Texas, 91.

STAYTON, CHIEF JUSTICE.—On March 3, 1882, appellant caused sixty-two alternate certificates, of which it was the owner, to be located on land in Webb County, but the surveyor refused to survey the land, and this action was brought against him and persons claiming the land, with prayer that a writ of mandamus issue to compel him to make the surveys.

The surveyor and his codefendants alleged that the land was titled and owned by the latter through conveyances from one Joaquin Galan, to whom it was claimed the land was granted by the Spanish government some time before the year 1804.

. To show such a grant defendants pleaded and offered in evidence judgments rendered in the District Court for Webb County instituted to procure confirmation of the Galan grant.

In the year 1860 persons claiming through Joaquin Galan brought an action in the District Court for Webb County for confirmation of title under the Act of February 11, 1860. (Pasch. Dig., 4481–4491.) That cause came to trial on January 8, 1862, and resulted in an adjudication that at some time prior to the year 1804 the government of Spain granted to "Joaquin Galan a certain large tract of land situated on the east bank of the Rio Grande in this (now Webb) county about forty miles above the town of Laredo, embraced within the following boundaries, viz.:  Beginning at a well known place called the Rincon de Galan or the Angostura, on the eastern bank of the Rio Grande, said point being a small distance below the ancient town of Palafox; running from thence in a straight line northeasterly to a well-known point called the Cerrito Prieto, being a prominent solitary eminence; thence in a westerly direction to a well known point called Almudes, that being also a solitary hill or eminence; thence in a southerly direction to the bank of the Rio Grande in a straight line to a noted point called Arroyo de San Pedro where the same empties into the Rio Grande in the center of the same; thence down said river to the starting point, these said noted points forming all the ancient points or landmarks and boundaries to said tract."

The judgment recites, among others, the following facts:  "That it appeared to the court by original authentic documents that in the year 1805 said Joaquin Galan sold the said tract of land to Manuel Garza, who settled upon the same and occupied it for many years, and that about the year 1810, the government of Spain being desirous of forming a town on the river bank where the said Manuel Garza had planted

his said rancho, the said government did then and there condemn and take from the said Manuel Garza for the use of the government all that part of his said tract lying and fronting on the Rio Grande to the depth of six Mexican leagues, and did then and there lay out and establish the town of Palafox on the eastern bank of the Rio Grande with the ejidos extending across the same, and gave and donated the lands above and below the said town to the settlers of the same in the form and shape of porcions running back for depth six Mexican leagues or 30,000 varas, and that for said condemnation the said Manuel Garza was reimbursed in land lying above the town and jurisdiction of Palafox."

The court further found that the town of Palafox was destroyed by Indians about the year 1818; that action was brought by Daniel Ruggles, under whom the defendants in this action assert title, and it is not denied that they through Ruggles have whatever right Ruggles acquired by his purchase from the heirs of Manuel Garza, except as this may be defeated by the judgment rendered on January 8, 1862, which in so far as it gave confirmation was as follows:

"It is in consideration of the premises hereby ordered, adjudged, and decreed by this court that the said ancient title of the said Joaquin Galan to the said lands be confirmed to him, his heirs and assigns (except that part which was condemned to the use of the settlers), in the following manner, to-wit: beginning at a point on a direct line between the Rincon de Galan and Cerrito Prieto, distant six Mexican leagues of five thousand varas each from the left or western bank of the Rio Grande; thence in a straight line to the Cerrito Prieto; thence westerly to a hill called El Almud; thence southerly in a straight line toward the mouth of the San Pedro Creek or arroyo and the center of the same to a point six Mexican leagues distant from the river, measured by a line drawn parallel to said river, as the rear line of the jurisdiction of said town of Palafox; thence easterly along said parallel to the place of beginning: and that they thus have and recover from the State of Texas all the lands embraced within the aforesaid boundaries, constituting and making —— leagues of land, to be surveyed by the proper officer, and the field notes be returned unto the General Land Office of the State, with all convenient speed."

It is thus seen that the court confirmed the title only to that part of the grant lying back of a line running parallel with the Rio Grande and six leagues distant from it.

A motion for new trial was filed and overruled, and so the case stood until some time probably in 1869, when a motion was filed by Ruggles seeking construction of the decree of January 8, 1862, which on hearing was overruled.

Ruggles instituted another action about the same time he instituted this action in which the judgment referred to was rendered, and the pur-

pose of that was to have confirmation of title to another tract of land contiguous to and above that in reference to which the decree of January 8, 1862, was rendered; but this action was dismissed by the court on January 4, 1870, for want of jurisdiction.

On October 26, 1871, Ruggles made a motion to redocket those two cases, and this was done, and on the same day he filed a petition in which he in effect sought to have the decree of January 8, 1862, set aside and to have confirmation of title to both tracts, and this petition was amended on March 4, 1872, and on the 8th of March the petitions were overruled.

On March 12, 1872, Ruggles filed in the same court another petition seeking to set aside the decree of January 8, 1862, on which the district attorney accepted service for the State, and on the same day the court assumed to set aside the decree, whereupon on motion the two causes were consolidated, and on March 13, 1872, Ruggles filed an amended petition in which he sought confirmation of title to both tracts, embracing about sixty-three leagues of land. On the same day a judgment was rendered in his favor confirming title to both tracts.

It is conceded that plaintiff's locations cover none of the land title to which was confirmed under the Galan grant by the decree of January 8, 1862, and only embraces the land which in that decree was found to have been expropriated by the Spanish government and granted to the town of Palafox and its inhabitants.

The court below found that the land covered by plaintiff's locations was not vacant public domain and refused the writ of mandamus, and from that judgment this appeal is prosecuted.

On the trial of this cause, over the objections of the plaintiff the court permitted defendants to introduce in evidence the pleadings and judgments before referred to, which were filed and rendered subsequent to the year 1866. The objections to these were that the court had not jurisdiction to set aside the decree of January 8, 1862, after the adjournment of the term at which it was rendered, and further that jurisdiction of the court over the cases for confirmation ended on February 11, 1865.

The purpose of the Act of February 11, 1860, was to confer on the District Courts held within the boundaries named in it jurisdiction to investigate any claim against the State for land which had its origin prior to December 19, 1836, and to confirm the claims when the title was found perfect, or when not perfect, if, under the laws, usages, and customs of the government under which the claim originated, they would have matured into a perfect title had there been no change in the government sovereign within the designated territory.

The eleventh section of that act declared that "this act shall be limited to the term of three years from and after its passage."

The act was amended by the Act of January 11, 1862 (printed in Special Laws, 1862, p. 46), and the amendment declares "that the eleventh section of the above recited act shall read as follows, viz.: This act shall continue in force until the 11th day of February, A. D. 1865, and no longer."

Another act was passed on August 15, 1870, for the same purpose as the Act of February 11, 1860, but that conferred jurisdiction on the District Court of Travis County alone to hear and determine such causes between the State and persons seeking confirmation of titles. Pasch. Dig., arts. 7068–7079.

That a State can not be sued by a private person without its consent is well settled, and when such consent is given and a limitation placed on the right to bring such an action and upon the power of the court to hear and determine it, if that limitation be one of time, then the jurisdiction of the court ceases when that time has elapsed.

The jurisdiction conferred on District Courts held within the boundaries fixed in the Act of February 11, 1860, was not within the general jurisdiction conferred on District Courts, but was special in its nature and existed solely by reason of the act which conferred it. Commissioners v. Walling, Dall., 526; The State v. Casinova, 1 Texas, 404; The State v. Manchaca, 1 Texas, 588; Houston v. Robertson, 2 Texas, 20; Borden v. Houston, 2 Texas, 611; Bates v. The Republic, 2 Texas, 618; Rose v. The Governor, 24 Texas, 504; Ex. Parte Towles, 48 Texas, 447.

The eleventh section of the Act of February 11, 1860, and the amendment thereto fix the period after which the act could have no further effect whatever, except upon claims which had been adjudicated before the act ceased to confer right on persons to bring such actions, and upon the courts power to hear and determine them. Claims adjudged to be valid, while the act gave power to the courts to adjudicate them, are valid simply because the decree of confirmation made while the court had jurisdiction is conclusive of the existence of the facts which gives validity to them.

The act in question did not simply provide within what time actions under it might be brought, but with its amendment fixed a period after which it should cease to be operative.

It presents a case in which the jurisdiction of the courts ceased, stronger, if possible, than in cases in which a statute conferring jurisdiction is subsequently repealed; for parties instituting actions under it did so with full warning that they must be concluded before the period arrived at which under the terms of the act itself it would cease to be operative.

Many cases have arisen in which jurisdiction was conferred by a statute, in which it was held by the highest courts in the land that the repeal of the statute divested the courts of power to hear and determine

pending causes.    Norris v. Crocker, 15 How., 429; Insurance Co. v. Ritchie, 5 Wall., 541; Ex Parte McCardle, 7 Wall., 512; United States v. Tynen, 11 Wall., 95; Beers v. The State, 20 How., 529; Palmer v. Butler, 1 Hill, 324; Canal Co. v. Chicago, 14 Ill., 334; Hunt v. Jennings, 5 Blackf., 195; Stour v. Immell, 1 Watts, 258; Commonwealth v. Beaty, 1 Watts, 384; Peddle v. Hollinshead, 9 S. and R., 283; Hardeman v. Morgan, 48 Texas, 103.

Many other authorities on this question might be cited, but it is not necessary to do so, for no other conclusion could be reached unless the proposition that the jurisdiction of courts is not dependent upon law could be maintained.

In the case of Kennedy v. Jarvis, 1 S. W. Rep., 191, on the judgments now in question, a contrary rule was announced by the Commission of Appeals, but this court declined to express any opinion upon the question, and affirmed the judgment of the court below upon some ground not stated.

The objection to all the proceedings had in the District Court for Webb County after February 11, 1865, should have been sustained; for that court then lost all jurisdiction over the case dismissed on January 4, 1870, as well as over the case in which a final judgment was rendered on January 8, 1862, whether relief was sought through a petition in the nature of a bill of review or otherwise; and all jurisdiction over such cases vested in the District Court for Travis County alone after August 15, 1870.

While the court below declined to express any opinion as to the legal effect of the several judgments referred to, it is impossible to ascertain how far they may have influenced his judgment when considered in connection with all proceedings in the two cases.

It therefore becomes necessary to consider whether under the evidence properly admitted the judgment of the court below is correct.

The judgment of January 8, 1862, was properly received in evidence, and that establishes the fact that the owners of the Galan grant were not entitled to confirmation of title to all the land which was claimed to have been originally granted to him; and upon that judgment alone, so far as the record before us shows, rests all the right any of defendants can assert to lands embraced in the petition filed in the case in which that judgment was rendered.

The plaintiff there shows that the defendants have no such right in the land on which it made its locations as will deny to it the right to appropriate, unless some of them have acquired title to the porcion confirmed to Joaquin Galan by the Act of February 10, 1852.

Defendants claim under Ruggles, and whatsoever right appellant has comes through the State, and therefore all parties to this action except the surveyor may be said to hold in privity to those who were parties

to the action in which the judgment was rendered on January 8, 1862, and an inquiry might be made whether all the recitals in that judgment, made nearly thirty years ago, ought not to be held binding on all parties to this action, or at least *prima facie* evidence of the facts recited.

If these recitals be taken as true it is evident that all the land described in the petition on which the judgment of January 8, 1862, was based was once granted to Joaquin Galan; but that about the year 1810 the Spanish government, as might then lawfully be done, reacquired title to so much of the land as is involved in this action, after which it regranted this to the town of Palafox and its inhabitants.

The reinstitution of title in the Spanish government would defeat the right of any person claiming through Galan, and had not that government, or some succeeding one, sovereign within the territory, made other grant or grants of the land, then it would have been subject to plaintiff's locations; but if on expropriating the land the Spanish government regranted it to the town of Palafox and its inhabitants, then the land stands as titled land, and under the provisions of the Constitution would not be subject to location, even though on account of the destruction of the town and the loss of its organization the State may now be entitled to assert its right to so much of the land as may not have been granted to private persons.

It does not, however, become necessary now to consider what effect should be given to the recitals in that judgment, in view of another question which is decisive of this controversy.

It was agreed that the Legislature of this State by the Act of February 10, 1852, relinquished to Antonio Guerra three porciones of land and to Joaquin Galan one porcion, all within the jurisdiction of Palafox; and in support of the Galan grant to which confirmation proceedings related the court found: "That the Legislature of the State of Texas, by Act of February 10, 1852, which took effect April 17, 1852, recognized the Joaquin Galan grant by confirming a portion thereof to his heirs and assigns. That said Galan was also recognized by the aforementioned judgments, of January 8, 1862, and March 13, 1872."

The act referred to declares that "the State of Texas hereby relinquishes all her right and interest in the following described lands to the original grantees thereof, their heirs and assigns, to-wit:" Then follow the names of original grantees, with statement of lands relinquished, which were in several counties. In the county of Webb three porciones to Antonio Guerra, jurisdiction of Palafox, and one porcion in same jurisdiction to heirs and assigns of Joaquin Galan (Pasch. Dig., art. 4461). But we do not think that this law bears the construction put upon it by the court.

It is a recognition of the fact that one porcion, prior to the date of the act, had been granted to Joaquin Galan, but this would rather mili-

tate against the recognition of the fact that a grant of many leagues of land had been made to him, within which this smaller tract was situated; and the residue of the finding shows that the court gave some weight to the judgment of March 13, 1872.

The legitimate inference is that the commissioners, on whose report the relinquishments or confirmations were made, found no valid claim in favor of Joaquin Galan within that territory for more than one porcion, or that the Legislature on investigation found that this was the extent of his claim; and the fact that three porcions were confirmed to Antonio Guerra, but not as an assignee, would tend to negative the belief of the Legislature that such a grant as is claimed to have been made to Joaquin Galan was ever made in that locality.

To entitle appellant to the relief sought it must clearly appear that it has the legal right to have the surveys made, for unless this be shown. the court will not compel the surveyor to perform the service, and especially so when to do this the surveyor would violate the law. The burden of showing the existence of such a right rested on the plaintiff. If all the parties were before the court who assert right to the land, or who are shown to have claim, then it may be, if no effect be given to the recitals in judgment of January 8, 1862, that plaintiff would be entitled to the writ it seeks, if it had shown that none of these persons are the owners of any of the land covered by its locations; for as the land was once vacant, when such proof is made, a plaintiff seeking mandamus it would seem might rest.

Has the plaintiff shown such facts? Both the parties seem to concede, and it is the reasonable inference from the admitted facts, that four porcions of land within the boundaries covered by plaintiff's locations were confirmed by the Act of February 10, 1852, one of them to the heirs and assigns of Joaquin Galan and three to Antonio Guerra, and neither Antonio Guerra, nor any person shown to have acquired his right, is a party to this action.

The land which plaintiff seeks to have surveyed is the entire tract which in the judgment of January 8, 1862, was declared to have been expropriated by the Spanish government and subsequently granted to the town of Palafox and its inhabitants; and waiving all questions as to the effect of the recitals in that decree, the fact remains that there is land within the boundaries located, to the extent of four porcions at least, three of which are held by Antonio Guerra, or some person holding through him, by valid claim as against the State, and there is no exception of these lands in the prayer that the surveyor be commanded to survey all the lands located.

Ruggles claimed through a conveyance made, it seems, in 1805, but it does not appear whether this would pass title to the porcion Joaquin Galan may have subsequently acquired through grant made after the land in controversy may have been expropriated.

If it be not conceded that these porcions are within the limits of plaintiff's locations, then from the facts admitted and the laws referred to this is the presumption.

This court judicially knows that the town of Palafox existed, and when it is said that a porcion of land was granted within its jurisdiction we can only understand to be meant a tract of land such as was granted to an inhabitant of the towns established by the government within their limits, but beyond the town proper, its ejidos, dehesas, and proprios, and these tracts were more usually called suertes.

This will be seen by an an examination of the various grants confirmed by the Act of February 10, 1852. Pasch. Dig., art. 4461.

In the face of the fact that these four porcions must be held to be within the limits of plaintiff's locations, in the absence of evidence other than that found in the record the writ prayed for could not be awarded; and especially so when neither Guerra nor any person asserting his right has had an opportunity to be heard, unless it be the law that in actions such as this a peremptory writ of mandamus may issue, and still leave to the surveyor the right to disregard it in part, to judge for himself how far he must obey it, what particular land he must survey or refrain from surveying; or otherwise in obedience to the writ do an act in violation of law and of the rights of persons who have not been heard. When such a writ issues it must be obeyed in every particular, and this furnishes a reason why it will not be directed to issue until the applicant shows that he is entitled to have the respondent do the very act which it is claimed to be his legal duty to do, and such a writ can not issue when the relator shows that he has the right to have done only a part of that which he seeks, and does not show what part, less than the whole, he is entitled to have performed.

As said by Lord Campbell in Queen v. Railway Company, 16 American and English Corporation Cases, 30: "Before we can grant a peremptory mandamus the prosecutor is bound to satisfy us that there is a legal duty imposed upon the defendant to comply with all that is commanded in the writ. We consider it quite settled that if any part of what is commanded by a peremptory mandamus goes beyond the legal obligation the whole writ must be set aside."

To the same effect are the following cases: Queen v. Docks, 2 E. & B., 473; Chance v. Temple, 1 Iowa, 197; State v. County Judge, 12 Iowa, 242; State v. Railway, 77 Mo., 147; School District v. Lauderbaugh, 80 Mo., 194. The same rule is asserted by elementary writers: High on Extraordinary Legal Remedies, 548; Tapping on Mandamus, 324.

"A mandamus proceeding can not be used as a 'drag net.' The party seeking relief by that proceeding must specify just what he wants, nothing more or less" (80 Mo., 194); and in this case plaintiff not showing itself entitled to all the relief sought, if entitled to any on proper

TEXAS SUPREME COURT REPORTS. [*Galveston,*]

showing, the court below had but one course to pursue, which was to refuse the peremptory writ of mandamus; and having done so on sufficient grounds, although that court may have considered some evidence that ought not to have been considered, this court must affirm the judgment.

It is so ordered.

*Affirmed.*

Delivered March 27, 1891.