Danny J. **LOWREY**, Appellant,

v.

The **UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON**, et al., Appellees.

No. 08–91–00136–CV.

Court of Appeals of Texas, El Paso.

July 15, 1992.

Rehearing Overruled Aug. 26, 1992.

Thomas W. McQuage, Galveston, for appellant.

Dan Morales, Atty. Gen., Esther L. Hajdar, Asst. Atty. Gen., Austin, for appellees.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

LARSEN, Justice.

This appeal concerns the State's claim of sovereign immunity in a suit to set aside a Compromise Settlement Agreement (CSA) in a workers' compensation case. The trial court entered summary judgment for the University of Texas Medical Branch (UTMB), an agency of the State of Texas, and for individual defendants who are all employees of UTMB. We reverse as to UTMB and remand that portion of the case for further proceedings in the trial court.

## FACTS

Plaintiff/Appellant Danny J. Lowrey was hired as a painter at the University of Texas Medical Branch at Galveston in April 1981. In May 1981, he suffered an on-the-job injury to his right knee. He settled his workers' compensation claim, without benefit of counsel, by entering into a compromise settlement agreement for $11,000 in September 1986.

As a result of the injury, Mr. Lowrey had surgery and remains restricted from certain physical activities including ladder climbing, stooping, crawling, squatting and kneeling. He nevertheless continued to do light duty tasks in the UTMB paint shop for several years. His fellow painters resented this arrangement, and created a hostile working environment designed to drive Mr. Lowrey from his job.

On September 11, 1986, Mr. Lowrey was terminated from his employment. He brought suit on July 17, 1988, alleging: (1) violations of the Texas Commission on Human Rights Act prohibiting discrimination on account of handicap; (2) the State's willful misrepresentation in the settlement of his workers' compensation claim, entitling him to set aside the CSA and reopen the case; and (3) wrongful termination against supervisors who had violated UTMB's own internal procedures in firing him.

■ Defendants moved for summary judgment,[1] urging that: (1) plaintiff could not prevail on his handicap discrimination claim for a variety of reasons; and (2) that the remainder of plaintiff's claims, against both the State and the individuals, were barred by sovereign immunity. The trial court granted summary judgment on all causes of action for all defendants. Appellant challenges only those parts of the summary judgment disposing of his suit to set aside the CSA and against the individual defendants.

## SUIT TO SET ASIDE CSA

On appeal, UTMB urges two grounds for sustaining the summary judgment against plaintiff on the suit to set aside the settlement agreement: First, that sovereign immunity bars the action; and second, that an essential element of plaintiff's case was conclusively established against him.

---

1. Actually, it appears that a motion for summary judgment was never filed. The attorney general filed his Brief in Support of Defendants' Motion for Summary Judgment. The trial court's docket entry of October 4, 1990, states "Defendants' motion for S/J, denominated 'Brief in Support of Defendants' Motion for Summary Judgment,' heard & taken under advisement. HD." Under these circumstances, we will consider the brief and accompanying affidavits to constitute a motion for summary judgment in substantial compliance with Tex. R.Civ.P. 166a.

We note, however, that the clear language of Rule 166a(c) requires that a *"motion* for summary judgment shall state the specific grounds therefor." [Emphasis added]. The trial court does not act upon briefs, but upon motions. Were it not for the trial court's docket entry, the record in this case would be fatally lacking. It appears, however, that pursuant to Tex.R.Civ.P. 71, the trial court elected to treat the misnamed brief as a motion. We shall do the same.

In order to prevail in his suit to set aside a workers' compensation CSA for fraud, Mr. Lowrey must show (1) that misrepresentations concerning the employee's injuries were made by the carrier or the carrier's duly authorized agent; (2) that he relied upon the representations in making the settlement; and (3) that he was damaged because he had a meritorious claim for more compensation than the settlement amount. *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 468 (1949); *Texas Employers Insurance Association v. Alcantara*, 764 S.W.2d 865 (Tex. App.—Texarkana 1989, no writ). A review of the summary judgment record before the trial court, however, shows that UTMB never raised at that level the argument that plaintiff could not establish at least one of the elements of a suit to set aside the CSA. To support summary judgment, each independent argument must be alleged before the trial court. *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Having failed to present this ground for judgment for consideration, the argument was waived and cannot be considered by this Court.

### SOVEREIGN IMMUNITY

UTMB did, however, properly raise its argument that the State possesses sovereign immunity in this matter. The question before us here is one of first impression. We must decide whether plaintiff's action for rescission of the compromise settlement agreement against the State is a part of the underlying workers' compensation action for which the State has waived sovereign immunity, or whether it is an independent action for which the State retains its sovereign immunity. Examining the intent of the workers' compensation laws, the effect of a rescission and the relevant case law, we conclude that a suit for rescission of a CSA and the underlying workers compensation action must be viewed as a whole; therefore, we hold that plaintiff may pursue his workers' compensation action here.[2]

It is well settled that citizens may not bring suit against the State absent legislative consent. *Texas Mexican Railway Company v. Jarvis*, 80 Tex. 456, 15 S.W. 1089 (1891); *Missouri Pacific Railroad Company v. Brownsville Navigation District*, 453 S.W.2d 812 (Tex.1970). A suit to set aside a compromise agreement is one for rescission and cancellation of a contract. *Bullock v. Texas Employers Insurance Ass'n*, 254 S.W.2d 554, 556 (Tex.Civ. App.—Dallas 1952, writ ref'd); *Texas Employers Ins. Ass'n v. Kennedy*, 135 Tex. 486, 143 S.W.2d 583 (Tex.Comm'n App. 1940). Rescission, in this context, is an equitable remedy that operates to set aside a contract that is legally valid but is marred by fraud, mistake or for some other reason must be set aside to avoid unjust enrichment. *Country Cupboard, Inc. v. Texstar Corporation*, 570 S.W.2d 70, 73 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). Rescission works to avoid the contract, return any consideration paid and to return the parties to their respective positions as if no contract had ever existed. *Hunt County Oil Co. v. Scott*, 28 Tex.Civ. App. 213, 67 S.W. 451, 452 (1902, writ ref'd).

A cause of action for rescission accrues when the plaintiff discovered or should have reasonably discovered the fraud, mistake or other ground. *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (1943); *Bush v. Stone*, 500 S.W.2d 885, 889–90 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). Suits for rescission must be brought within four years of the accrual of the cause of action. Tex.Civ.Prac. & Rem.Code § 16.051 (Vernon 1986).

---

**2.** The dissent points to *Wallace v. City of Midland*, 836 S.W.2d 641 (Tex.App.—El Paso 1992, motion for rehearing pending), in arguing that sovereign immunity should apply here. *Wallace*, however, concerned a suit alleging breach of the duty of good faith and fair dealing by a self-insured municipality. Such a suit is clearly independent of the underlying compensation claim, as it involves a wholly different duty and measure of damages. It is distinguishable from a suit to set aside a CSA, the goal of which is simply to allow claimant full recovery under the compensation laws.

■ UTMB argues that because rescission is an independent action, with its own elements, statute of limitations and remedies, that absent specific authority from the legislature, the plaintiff cannot pursue this cause of action against defendant, a branch of state government. Plaintiff, on the other hand, argues that sovereign immunity is inapplicable because this type of suit is not a prosecution of an unauthorized cause of action against a state agency, but is actually at bottom, a suit to recover workers' compensation benefits, an action against the State statutorily approved by the Texas legislature. Tex.Rev.Civ.Stat. Ann. art. 8309d (Vernon 1967).

We agree with plaintiff. In reaching this conclusion, we have examined closely the case of *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 468 (1949) where the Texas Supreme Court was asked to determine whether a district court had subject matter jurisdiction to hear a suit to set aside a CSA for $215, an amount which, standing alone, was below the minimum amount needed to invoke jurisdiction. *Id.* The Court there scrutinized the amount actually in controversy, and concluded that the suit to rescind the CSA was only a first step toward the ultimate relief actually sought: A full award under the workers' compensation statutes. The Court observed that the Industrial Accident Board[3] was not empowered to set aside the CSA; only a court could do that. Conversely, the Court could not make an award to plaintiff under the compensation laws; the statutes require that this first be done by the IAB, and only then might a dissatisfied party take an appeal to district court. The Supreme Court observed "the effect of such holding may be to require *a case* to be tried by piecemeal, but it must be tried that way or not at all." [Emphasis added]. *Brannon*, 224 S.W.2d at 469. In analyzing the process, the Court observed:

> This complicated procedure should not blind us to the real nature of the matter in dispute between the parties. The fact that in the present proceeding the court cannot award the petitioner a money

judgment does not alter the amount or value of the matter in controversy. If the petitioner succeeds in this proceeding, he has won the first round in his attempt to collect $9,810. On the other hand, if the respondent wins in this proceeding, then the petitioner will have finally lost his claim for $9,810, because he will be concluded by the judgment upholding the compromise agreement from further asserting this claim.... *Brannon*, 224 S.W.2d at 469.

Thus, although a suit for rescission is, in form, an independent proceeding, in substance it is but one step toward plaintiff's ultimate goal of recovering full benefits under the workers' compensation laws. Mr. Lowery has a single cause of action against UTMB for workers' compensation; if the trial court determines the compromise settlement agreement at issue here was fraudulently obtained, it will remand to the Texas Workers' Compensation Commission for further review and action. The suit before this Court is one in which plaintiff seeks adjudication of UTMB's affirmative defense in the nature of accord and satisfaction, by way of the CSA. If plaintiff prevails, he will simply be placed back in the administrative process with an opportunity to re-urge his claim. The substance of this suit is one for workers' compensation, which the legislature has clearly authorized against the State.

■ Finally, in deciding this issue, we are mindful of the oft-repeated philosophy that the workers' compensation laws are to be liberally construed in favor of the injured worker. *Stott v. Texas Employers Insurance Association*, 645 S.W.2d 778, 780 (Tex.1983); *Hargrove v. Trinity Universal Ins. Co.*, 152 Tex. 243, 256 S.W.2d 73, 75 (1953). If plaintiff can prove that he entered into a settlement because the workers' compensation representative made false promises to him, upon which he detrimentally relied, he should be allowed to reopen his workers' compensation claim. That he was employed by a state agency when his injury occurred should not affect that right.

**3.** Now the Texas Workers' Compensation Commission.

We find that the State's waiver of sovereign immunity for workers' compensation claims extends to a cause of action for rescission of a fraudulently obtained compromise settlement agreement. We, accordingly, reverse that portion of the summary judgment.

## INDIVIDUAL DEFENDANTS

 In addition to his cause of action against the State, plaintiff asserts claims against several individuals employed in supervisory capacities at UTMB. He alleged that these defendants:

[W]ere bound by the Defendants' rules and regulations, which were published, and mutually accepted by the Plaintiff and Defendants, which requires a set procedure prior for [sic] the termination of any employee. Said rules and procedures also contain a uniform non-discrimination against handicap employees which was binding on all departments of THE UNIVERSITY. Defendants failed to give proper notices pursuant to these policies, and acted contrary to its own rules and regulations although it was contractually bound to do so, and there were no just grounds for the Plaintiff's termination.

Defendants terminated and discharged the Plaintiff without following their own rules and regulations and ignoring their own grievance procedure.

The above-described actions of Defendants constitute a wrongful discharge entitling Plaintiff reinstatement and compensatory damages.... [4]

Plaintiff's claims here depend upon the premise that the individual defendants acted outside the scope of their official authority in terminating him. If a state employee acts within the scope of his or her legal authority, a suit based upon those acts is actually a suit against the State that may not be maintained unless the State has consented to be sued. *Bagg v. University of Texas Medical Branch at Galveston,* 726 S.W.2d 582, 585 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). If, on the other hand, the acts of officials are not lawfully authorized, then a suit brought by one whose rights have been invaded by such acts is not a suit against the State and the individuals are not immune. *Id.; Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945). Unlawful or unauthorized acts are not considered acts of the State, and state officials can be sued in their individual capacities for wrongful unofficial acts. *Bagg,* 726 S.W.2d at 586.

 Here, the decision to terminate plaintiff's employment clearly fell within the official duties of the individual defendants. This case is distinguishable from *Bagg,* in which plaintiff alleged acts which could never fall within the scope of official authority, such as eavesdropping on plaintiff's private telephone conversations. The individual defendants here, in contrast, by affidavits and supporting documents, set out the process and reasoning which led to Mr. Lowery's separation from UTMB; Lowery's response to this summary judgment evidence was simply that "contrary to the promises [of continued employment] made to me after I received my lump sum compensation check by MR. WHITE specifically and various persons in U.T.M.B. Personnel Department, I was terminated from my job on September 11, 1986." Lowery does not explain how the termination violated any policy or rule, or how any procedure in his case was improper. Neither does he allege any *ultra vires* act by any individual defendant.

Thus, we find defendants have established that plaintiff Lowery's termination was within the scope of their official duties, and they are, therefore, entitled to the same immunity as that possessed by the

---

4. In his brief on appeal, plaintiff Lowery argues that his petition makes out a claim against the individual defendants under 42 U.S.C. § 1983, a statute which creates a private cause of action for deprivation of federal rights under color of state law. We fail to see, however, how the language above alleges a violation under that federal law. This is particularly true because plaintiffs alleging Section 1983 violations must specifically allege exactly what rights, under clearly established law, defendants violated. Neither side, moreover, argued or cited 42 U.S.C. § 1983 before the trial court. Under these circumstances, we find that plaintiff did not allege violations of Section 1983 in his petition.

State on the cause of action for wrongful termination. The summary judgment was proper as to each individual defendant.

## CONCLUSION

Because we find that the State's waiver of sovereign immunity in workers' compensation cases extends to suits for rescission of fraudulently obtained settlements, we reverse the trial court's summary judgment as to that cause of action and remand for further proceedings against defendant UTMB. As to all other causes of action and other defendants, we find that summary judgment was proper and affirm.

OSBORN, C.J., concurs.

KOEHLER, J., dissents.

OSBORN, Chief Justice, concurring.

This being a case of first impression in this state, we are without clear authorities to give direction on the issue before the court. The controlling issue between these parties is what amount of money should Mr. Lowery recover from the UTMB for his incapacity resulting from a compensable injury, or how much should he recover under the Workers' Compensation Act. If he has been paid all that he is entitled to recover, he can recover nothing more. If he has not been paid in full and there was fraud in the settlement, can he recover the full amount for the incapacity sustained? That is the very basis for the statute.

The suit to set aside the settlement agreement is ancillary to a direct claim for the full amount to which he is entitled under the Act. But for the State having waived its immunity in the first place, there would be no right to recover compensation benefits and without that right there would be no settlement agreement which could be set aside for fraud. This suit, although for rescission, has to be ancillary to the compensation statute. In the words of the song, "you can't have one without the other." Clearly, we have the workers' compensation statute and its waiver of immunity. It must be given a liberal interpretation as Justice Larsen has done. To hold otherwise is to say, if you do not work for the State, you can set aside a settlement agreement obtained on fraudulent grounds, but you can not do that if you work for the State because the State is immune from its fraudulent acts. Such a result is not possible when the statute is given a liberal interpretation.

Surely, a liberal interpretation must mean an opportunity to receive full payment according to the incapacity incurred. Any fraud which fully and finally denies that opportunity without some remedy which can avoid the fraud necessarily results in a denial of justice and the benefits of a statutory scheme for compensation. Who will say that is a liberal interpretation of the statute?

I concur.

KOEHLER, Justice, dissenting.

I respectfully but strongly dissent from the majority and concurring opinions which reflect nothing less than judicial legislation to further weaken the doctrine of sovereign immunity.

It is a longstanding rule that a state cannot be sued without its consent, and then only in the manner, place and courts designated. *State v. Isbell*, 127 Tex. 399, 94 S.W.2d 423, 424 (Tex.Comm'n App.1936); *Paris Milling Company v. Bullock*, 583 S.W.2d 487, 489 (Tex.Civ.App.—Waco 1979, no writ). Thus, it is clear that the State is immune from suit unless the legislature has consented to the specific suit or the particular kind of suits. *Duhart v. State*, 610 S.W.2d 740, 741 (Tex.1980); *Director of the Department of Agriculture and Environment v. Printing Industries Association of Texas*, 600 S.W.2d 264, 265 (Tex. 1980); *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex.1976). See also *State Department of Highways and Public Transportation v. Dopyera*, 35 Tex.Sup. Ct.J. 1039, 1041, 834 S.W.2d 50 (July 1, 1992). It is also well-established that for the legislature to waive the State's governmental or sovereign immunity, it must do so by clear and unambiguous statutory language. *Duhart*, 610 S.W.2d at 742; *Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377, 382 (Tex.App.—San Antonio

1990, writ denied); *City of Corpus Christi v. Acme Mechanical Contractors, Inc.*, 736 S.W.2d 894, 906 (Tex.App.—Corpus Christi 1987, writ denied); *Lynch v. Port of Houston Authority*, 671 S.W.2d 954, 958 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Being in derogation of sovereignty, a grant of consent to sue the State must be strictly construed. *Paris Milling Company*, 583 S.W.2d at 489.

A suit to set aside a workers' compensation compromise settlement agreement (CSA) is not a suit under the Workers' Compensation Act. Unlike a suit to set aside an award of the Industrial Accident Board, a suit to set aside or rescind a CSA for fraud or mistake is in both form and substance an independent cause of action. Other than the fact the subject matter of the contract sought to be set aside is a compensation settlement, the suit is unrelated to any provisions of the Workers' Compensation Act. As stated in *Luersen v. Transamerica Insurance Company*, 550 S.W.2d 171, 173 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.):

> The power of the courts to set aside a compromise settlement agreement for fraud or mistake stems not from the Workmen's Compensation Law but instead from the Constitution and general statutes defining the court's jurisdiction. Whenever a party to a compromise settlement agreement claims to have been induced to execute the agreement through fraud or mistake, the court is the only forum to which he may resort. See *Brannon v. Pacific Employers Ins. Co., supra;* ....

The majority cite *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466 (1949), seemingly in support of their stunning conclusion that by a liberal construction of the Workers' Compensation Act, the legislature has authorized a suit against the State to set aside a compromise settlement agreement. Since a suit to set aside a CSA for fraud or mistake is independent and unrelated to the Workers'

Compensation Act, it is entirely inappropriate to rely on a "liberal construction" of that Act. Moreover, *Brannon* offers no support for the majority's sweeping conclusion, the issue in that case being primarily concerned with jurisdictional amount. In addition to language almost identical to that quoted above from *Luersen, Brannon* also stated that "[i]n a suit to set aside a compromise settlement on the grounds of fraud, the rules of common law applicable to suits for rescission and cancellation are applicable." 224 S.W.2d at 468. Because a suit to rescind a CSA is of common law origin, it cannot be said that it is derived from the Workers' Compensation Act.

Since a suit to set aside a CSA is not a suit under the Workers' Compensation Act, in order to be maintained it must be authorized under some other statute. *Duhart*, 610 S.W.2d at 742. The majority do not and cannot point to any statutory language which expressly, or even impliedly (which would be insufficient under *Duhart*), authorizes a suit against the State. The only statutory reference in the majority opinion is to Tex.Rev.Civ.Stat.Ann. art. 8309d (Vernon 1967). Sections 11,[1] 17, 20 and 21 of Article 8309d relate only to suits to set aside final rulings and decisions of the Industrial Accident Board, not at all to suits to set aside CSAs for whatever reason. The only other argument advanced by the majority in support of their novel holding is that it is somehow inequitable or unfair to allow a suit to set aside a CSA for fraud against a private person or corporation but not against a governmental entity. This argument would be just as valid against all defensive claims of governmental immunity, so why not just come out and say that for that reason we are abolishing completely the doctrine of sovereign immunity regardless of what the legislature or the Supreme Court have said or not said on the matter.

Finally, the holding of the majority that the State's waiver of sovereign immunity for compensation claims extends to causes

---

1. Section 11 was repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(19), eff. Jan. 1, 1991.

of action to rescind CSAs is completely inconsistent with our very recent holding and opinion in *Wallace v. City of Midland,* 836 S.W.2d 641 (Tex.App.—El Paso, 1992, motion for rehearing pending). In that case, a fireman had filed an independent damage suit (separate from a suit by both parties to set aside the IAB award) against his self-insured city employer, alleging breach of the duty of good faith and fair dealing in handling his compensation claim. We affirmed the trial court's summary judgment in favor of the city, holding that since it was required by statute [Tex.Rev. Civ.Stat.Ann. art. 8309h § 2(a) (Vernon Pamph.1992)] to extend in one manner or another workmen's compensation benefits to its employees, neither it nor the legislature intended to waive its tort immunity. By the same reasoning, there is no statutory language within or outside the Workers' Compensation Act which would authorize a court to set aside a contract to which the State is a party on grounds of fraud or mistake.

Since I am in agreement with the remainder of the majority opinion, I would overrule both of the Appellant's two points of error and affirm the summary judgment of the trial court.