Nancy Teat et al. v. W. L. McGaughey et al.

No. 14.

1. **Mandamus, when Issued Against an Officer.** — A writ of mandamus will lie against an officer to compel the performance of a plain and imperative duty. The act to be compelled must be one which he has no discretion to refuse to perform, and which does not call for the exercise of his judgment upon matters of fact.

2. **Mandamus—Original Jurisdiction of Supreme Court.**—We are clearly of opinion that it was intended neither by the recent amendments to the Constitution nor by the statutes which have been passed in pursuance thereof, to confer jurisdiction on this court to try a case on mandamus in which the act sought to be compelled may involve the determination of a doubtful question of fact. It was not intended that the jurisdiction should be exercised in any case unless the officer was under a legal obligation to do the act, and the right to have it performed was not dependent upon the determination of such doubtful questions of fact.

3. **Laches a Bar to Mandamus.**—Laches may be a bar to a writ of mandamus, and mandamus is refused on that ground when this court is asked to compel the Commissioner of the General Land Office to cancel a patent forty-five years after its issuance, alleged to have been issued by mistake, and to issue another patent in another name. It seems that the certificate and field notes were in the name in which it was sought to have the patent issued.

4. **Jurisdiction to Grant Mandamus.**—Quære, whether the Legislature, in attempting to define the jurisdiction of the Supreme Court in mandamus suits, has sufficiently "specified the cases" in which the court may grant the writ, as required by the Constitution.

5. **Statutes Construed.**—The constitutional clause drawn into discussion is: "The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State." The statute is: "The Supreme Court, or any justice thereof, shall have power, * * * and in term time or vacation may issue writs of quo warranto or mandamus against any district judge or officer of the State government, except the Governor of the State."

This was an original application to the Supreme Court, seeking to control the action of the Commissioner of the General Land Office.

The facts are set out in the opinion of the court.

*Jas. B. Goff*, for plaintiffs.— In the judgment of petitioners, and from utterances of the court on former partial hearing, their right to the relief prayed for depends on the decision of two questions, viz.:

1. Has the court jurisdiction to grant the relief sought?

2. Have plaintiffs an adequate remedy at law?

As to the first question, it is submitted that this jurisdiction is clearly conferred by section 3 of article 5 of the Constitution of Texas, as amended under joint resolution of the Twenty-second Legislature, which provides, that "The Supreme Court and the justices thereof shall have power to issue writs of habeas corpus as may be prescribed by law; and under such regulations as may be prescribed by law, the said courts and the justices thereof may issue the writs of mandamus, procedendo, certiorari, and such other writs as may be necessary to enforce its jurisdiction" (General Laws 1891, page 197); and under article 1012 of chapter 14 of the Acts of the Called Session of the Twenty-second Legislature, approved April 13, 1892 (General Laws Called Session 1892, page 21), which provides, that "The Supreme Court or any justice thereof shall have power to issue writs of habeas corpus as may be prescribed by law; and the said court, or the justices thereof, may issue writs of mandamus, procedendo, certiorari, and all writs necessary to enforce the jurisdiction of said court; and in term time or vacation may issue writs of quo warranto or mandamus against any district judge or officer of the State government except the Governor of the State."

It is apparent from the language of the foregoing section of the organic law that its framers intended thereby to remedy a defect in the Constitution, to which it is an amendment, and which conferred on this court appellate jurisdiction only, by conferring jurisdiction to coerce refractory officers of the government to perform their duties, and the original jurisdiction in such cases as the one at bar was intended.

It is well known matter of Texas history, that previous to the adoption of said amendment many controversies had arisen in our courts relative to the power of the judiciary to control the action of members of the executive department, resulting in much litigation and in conflicting decisions of this court; it having been held in the case of Kuechler v. Wright, 40 Texas, 600, that the District Court had such power, and in the case of Bledsoe v. International & Great Northern Railway Company, 40 Texas, 537, and in several other cases, that it had not; and there can be no doubt that the provisions above referred to in the Constitution and act were intended to settle this controversy by conferring original jurisdiction upon the highest court in the State to hear and determine such controversies, in order that they might be brought to speedy issue and finally adjudicated without having to pass the ordeal of several tribunals.

It is plain in the amendment to the Constitution the intent was to confer on the Supreme Court original jurisdiction in all cases of mandamus; else why declare that it should have appellate jurisdiction only "except as herein specified," and immediately afterward specify "writs of mandamus?"

It also seems that the Legislature, in article 1012 (Acts of Special Ses-

sion, page 21), intended to carry out the same view, as they provided, that the Supreme Court or any justice thereof shall have power to issue writs of mandamus, etc., against any officer of the State government except the Governor.

The language of the Constitution is broad enough to cover the case at bar, as the power conferred to issue the writ is unlimited, except that it must be issued "under such regulations as may be prescribed by law." The language used in the same section, authorizing the issuance of writs of habeas corpus, is significant, in that it is restrictive in only permitting the issuance of said writ in cases "prescribed by law." The Legislature framed the statute in almost the identical language of the Constitution, adding the "regulations," viz., that writs of quo warranto and mandamus might be issued "in term time or vacation," and excepting the Governor.

It will not do to contend, as defendant's answer seems to suggest, that the intention of the amendment and act was only to give the court power to issue the writ of mandamus as a means of enforcing its appellate jurisdiction, as this view is plainly negatived by the language of both, viz., in the Constitution authorizing the issue of "writs of mandamus, procedendo, certiorari, and such other writs as may be necessary to enforce its own jurisdiction," i. e., those writs without qualification, and also such other or additional writs as might be proper to enforce jurisdiction; and the statute using the clearer language, "writs of mandamus, procedendo, and all writs necessary to enforce the jurisdiction of said court."

As to the second question, it is an insufficient answer to say that the statute provides the action of trespass to try title, whereby petitioners may recover possession of the land granted to their ancestor, as this would not be an entirely adequate remedy, as after having secured possession their title has been established only as against the person then in possession, who may be a mere squatter, and they would still be deprived of their legal title by reason of the error of the Commissioner which they seek to have corrected, and they would be subject to the same controversy every time any one not a party to the suit chose to question their right to the land.

If the land belongs to petitioners, as alleged in their petition, they have a right to have their title made clear, and this can only be done by the cancellation of the erroneous title, during the existence of which they have simply an equity, the apparent legal title being in another, viz., any one named Lucy Wilkinson; and should they desire to sell, it would be difficult to find a purchaser.

*C. A. Culberson*, Attorney-General, and *Frank Andrews*, assistant, for defendants.—We are met at the threshold of the proceeding with a jurisdictional question: Has the Supreme Court of this State, under our Con-

stitution and laws, original jurisdiction to issue and enforce the writ of
mandamus against the Commissioner of the General Land Office?

The question is one of first impression in the jurisprudence of this State,
and, so far as we are advised, has never heretofore been presented to
this court for its determination.   It has not under our present Constitu-
tion as amended September 22, 1891, and prior to the adoption of the
amendment all preceding Constitutions have provided that the Supreme
Court should have "appellate jurisdiction only."   Const. 1876, art. 5,
sec. 3; Const. 1869, art. 5, sec. 3; Const. 1866, art. 4, sec. 3; Const. 1861,
art. 4, sec. 3; Const. 1845, art. 4, sec. 3.

Under former Constitutions, so far as we are able to ascertain, there
was never any pretense that the Supreme Court had any original jurisdic-
tion to issue the writ of mandamus.   Its jurisdiction was appellate only;
but having once obtained jurisdiction of any cause of action, it had au-
thority in the exercise of such jurisdiction to issue any and all writs
necessary to enforce the same.   Wells v. Littlefield, 62 Texas, 28; Garza
v. Baker, 58 Texas, 487; Churchill v. Martin, 65 Texas, 367.

The amendment to the Constitution of September 22, 1891, provides,
that "the Supreme Court shall have appellate jurisdiction only, except
as herein specified."

The specified exception is, "The Legislature may confer original juris-
diction on the Supreme Court to issue writs of quo warranto and manda-
mus in such cases as may be specified, except as against the Governor of
the State."   Const., art. 5, sec. 3.

This provision clearly does not confer, by force of its own terms, any
original jurisdiction upon the Supreme Court.   It is purely permissive in
its nature.   It does not attempt to confer any jurisdiction upon that
court of itself, but provides that the Legislature may confer original juris-
diction in a limited and specified class of cases.

The Constitution not only does not confer any such original jurisdic-
tion as is asked to be exercised by the plaintiffs in this case, but it limits
the authority of the Legislature to confer such jurisdiction, and provides
how the same may be conferred by the Legislature if it see proper to act
at all.   It is plain that the question of whether or not this court shall
have original jurisdiction in the limited class of subjects mentioned in
the Constitution is a question in the first instance for legislative discre-
tion.   If in the exercise of its discretion the Legislature shall see fit to
confer such jurisdiction upon this court, it must proceed in the manner
indicated in the Constitution.

"The Legislature may confer original jurisdiction on the Supreme
Court to issue writs of quo warranto and mandamus in such cases as may
be specified."

The Legislature must not only confer this jurisdiction upon the court

pointedly, but it must also specify in what cases the writ may issue. It must be observed that the power is, to confer original jurisdiction to issue the writs in such cases as may be specified, except as against the Governor of the State. It is not provided that the Legislature may confer original jurisdiction upon this court to issue the writs against such persons or officers as may be specified, but that it shall extend only to such cases as may be specified, and that it shall not extend to the Governor of the State in any class of cases. The distinction between persons or officers and cases is very broad and plain. It is unmistakable. In view of this provision, it was necessary to specify the cases in which, and not the officers against whom, the writs could issue.

If the Legislature had provided that this court should have original jurisdiction to issue the writ of mandamus in all cases where the Secretary of State refused to file charters, the Comptroller of Public Accounts refused to draw his warrants, the Commissioner of the General Land Office refused to receive and accept files or issue or cancel patents, or the Treasurer refused to pay money, in pusuance of law requiring them to do so, or where district or county judges or judges of the Courts of Civil Appeals refused to proceed to judgment, then a class of cases would have been enumerated and specified in which the writ could issue from this court. Or if it had been provided that when any person usurped a public franchise or intruded himself unlawfully into a public office, that this court should have original jurisdiction to issue the writ of quo warranto and remove the usurper or intruder, a class of cases would have been specified as required by the Constitution.

This provision of the Constitution evidently intended that cases in which the original jurisdiction could be conferred upon this court should be specifically enumerated, and should be only such cases as experience and legislative wisdom should determine and point out as necessary, provided that the writs should not in any class of cases extend to the Governor of the State; and that where a case or cases should be specified in which the writ should issue, they could not issue against the Governor, though he be the actor in a specified case in which the jurisdiction was conferred.

The Legislature, if it ever attempted to confer any original jurisdiction upon this court, has not acted in pursuance of the constitutional provision. It is insisted that the Legislature has not even attempted to confer original jurisdiction upon this court to issue either of the writs named in the Constitution.

A careful examination of the act of the Twenty-second Legislature, General Laws, Special Session, page 19 (the only act upon the subject since the adoption of the constitutional amendment), discloses that no such jurisdiction is conferred. The only part of that act relating to the jurisdiction of the court is article 1012, as follows: " The Supreme Court,

or any justice thereof, shall have power to issue writs of habeas corpus as may be provided by law; and the said court or the justices thereof may issue writs of mandamus, procedendo, certiorari, and all writs necessary to enforce the jurisdiction of said court; and in term time or vacation may issue writs of quo warranto or mandamus against any district judge or officer of the State government, except against the Governor of the State.''

This is the only law relative to the jurisdiction of the Supreme Court to issue these writs, and it says nowhere, by terms or implication, that this court shall have *original* jurisdiction to issue these writs against any officer. This article confers no authority or jurisdiction upon the Supreme Court which it did not fully possess under the Constitution. It may be contended that by virtue of the last clause of the article quoted the Legislature attempted to confer original jurisdiction upon the Supreme Court to issue these writs, or else there could be no object in placing this clause in the article and twice naming the writ of mandamus. This suggestion is wholly without force.

It is impossible to discover any legislative object, purpose, or intent in the first clause of the same article, which provides, that the Supreme Court or any justice thereof shall have power to issue writs of habeas corpus as may be prescribed by law.

The Constitution has substantially the same provision, and the statute above quoted neither takes from nor adds to the power of the court. The same may be said with equal force of the second clause of the same article, and also the preceding article. The third and last clause, relating to the writs to be issued, could not have been intended by the Legislature to confer original jurisdiction upon this court, and if so, it wholly failed in its purpose.

As heretofore shown, this court had always been denied original jurisdiction under every preceding Constitution. It had had '' appellate jurisdiction only.'' It is not believed, therefore, that the Legislature intended to change the jurisdiction of this court in so important a matter by the use of such vague, indefinite, and uncertain terms. If it means anything, it means nothing more than that this court may either in term or in vacation issue the writs when necessary to enforce its jurisdiction. There is a total absence of any words sufficient to confer original jurisdiction; and if such had been the legislative intention, some word or term would certainly have been used to clearly and unmistakably indicate this intention. It was an innovation in our system of jurisprudence; a departure in our system of practice. If such had been the intention of the Legislature, it would have used no uncertain terms, and would reasonably have provided some mode of procedure. It is true this court has power to make, establish, and enforce all the necessary rules for practice and procedure for the government of said court and all other courts in

this State, so as to expedite the dispatch of business in said courts. But so far as we have been able to ascertain, this court has never made and established any rules of practice and procedure relative to its alleged original jurisdiction. The Legislature clearly established none, though it has prescribed many rules in such classes of cases as this and other courts had unquestioned jurisdiction of by virtue of the Constitution and laws.

Had the Legislature so intended, it would have been an easy matter to have said, that " the Supreme Court shall have original jurisdiction upon proper application to issue the writs of quo warranto and mandamus,'' and to have specified a class of cases in which such writs might issue, or to have used some words or terms of unmistakeable import to have conferred original jurisdiction upon this court. But such is not the case in the statute under consideration.

The court ought not to enlarge its jurisdiction and make radical innovations upon a well established system of jurisprudence without the plainest grant of power from the proper constitutional authority. It certainly ought not to do so by force of its own construction, and there seems to be no reasonable construction of the act in question that would warrant the conclusion that any original jurisdiction was intended to be conferred upon this court. We are confidently of the opinion that if the able counsel for the plaintiffs in this case had read that article of the act above cited, without a well grounded intention to discover some original jurisdiction in this court, the thought of such original jurisdiction would never once have occurred to him.

The Constitution, however, does not enlighten us any upon the act, for the Constitution provided that original jurisdiction may be conferred in such cases as may be specified. No cases have been specified, and the very absence of any specification of cases or attempt otherwise to comply with the Constitution, leads us inevitably to the conclusion that the Legislature made no attempt to confer any original jurisdiction upon this court.

The question of original jurisdiction in this court was and is an experiment, and it is the only question of jurisdiction not positively settled by the Constitution itself; the only one left open for legislative action or change. In all other things the jurisdiction of the court is appellate only, and fixed by the terms of the Constitution.

This feature of the court's jurisdiction being purely experimental, it was left so that it need not be conferred upon the court at all, for the provision is purely permissive, and so that if once given and found unsatisfactory, it could, by repeal, be taken away.

The framers of the constitutional amendment did not intend to fasten irrevocably upon this court a jurisdiction which, unless very greatly limited, would prove a fruitful source of evil; one which would permit every nature of case and petty grievance, in which either of the writs could issue, to be brought before this court for decision.     *     *     *

GAINES, ASSOCIATE JUSTICE.—This is an application to this court for a writ of mandamus to the Commissioner of the General Land Office. It is alleged in the petition, in substance, that the plaintiffs are the heirs of Leroy Wilkerson; that he died in 1836; and that on the 2d day of March, 1838, a certificate was issued, at the instance of the administrator of his estate, to his heirs, for one-third of a league of land; that on the 10th day of November, 1845, they caused it to be located upon a certain tract in the petition described, and that in pursuance of the location they caused the land to be surveyed and the field notes of the survey and the certificate to be returned to the General Land Office.

It is further alleged, that the Commissioner of the Land Office at that time ordered the patent to issue to the heirs of Leroy Wilkerson, but that no such patent ever issued; and that thereafter, on the 24th day of August, 1846, by mistake, a patent was issued to the heirs of Lucy Wilkerson.

It is further averred, that no such person ever existed as Lucy Wilkerson, and that there is no person claiming the land by virtue of that patent, but that it is in possession of one Deidrich Rode, who is in possession of the land, claiming adversely to plaintiffs.

It is further averred, that plaintiffs had demanded of defendant McGaughey, as Commissioner of the General Land Office, that he cancel the patent previously issued, and that he issue a patent to the heirs of Leroy Wilkerson, and that he had refused.

The plaintiffs pray for a writ commanding the Commissioner to cancel the old and to issue a new patent in accordance with the certificate. Rode was made a party, and though served with process, has not appeared.

The defendant McGaughey filed exceptions to the jurisdiction of the court, general and special demurrers, and an answer to the merits. The cause has been submitted upon the exceptions and demurrers.

A writ of mandamus will lie against an officer to compel the performance of a plain and imperative duty when the plaintiff has no other adequate means of redress. The act to be compelled must be one which he has no discretion to refuse to perform, and which does not call for the exercise of his judgment upon matters of fact. When there are conflicting claims to be affected by the act sought to be enforced, which may call for the determination of mixed questions of law and fact, the officer can not be drawn into the litigation and forced to act until the right has been determined and his duty made clear.

In The Commissioner v. Smith, 5 Texas, 471, Mr. Justice Wheeler says: "It is only in those cases where the right or title is not litigated that the party may proceed by mandamus against the Commissioner at the seat of government. But where there are questions of fact to be litigated between those holding adverse claims, before the right of the party to his patent can

be determined, he may and ought to sue upon his survey and certificate in the county in which the land is situated, and then settle the question of right.''

The principle here recognized is the rule of the common law, as is well illustrated by the case of Rex v. Banks, 3 Burr., 1452. That was a proceeding for a mandamus to compel certain officers to take action to bring about an election of a mayor, and it appeared that there was a de facto mayor who was performing the functions of office. Upon that fact being shown to the court, the acting mayor was required to be made a party. We now quote from the report of the case: '' Lord Mansfield proposed, that the counsel for the defendants should file their affidavits, that the prosecutor's counsel might be able to judge whether, upon the affidavits of both sides compared together, it was a doubtful election, and fit to be tried upon an information in the nature of a quo warranto, or whether it was a mere colorable election and clearly void. For if the former should prove to be the case, the court ought not to grant a mandamus; in the latter case they ought.'' The affidavits were filed, and the counsel for the prosecutor being satisfied that it was a doubtful question, dismissed his case.

The limitation upon the writ here enforced accords with the definition of its scope as laid down by all the authorities.

A different practice, in certain cases at least, seems to have grown up in the District Courts of this State, and seems also to have been recognized as proper by this court. When there have been conflicting claims to land filed upon by a party, he has been permitted to bring suit against the adverse claimant and the surveyor, and to pray a mandamus against the latter, to compel him to make the survey. In such a case the mandamus is incidental to the main litigation. The practice is convenient and unobjectionable upon broad principles, provided the officer is absolved from the payment of costs in cases in which the right is not clear. The practice has probably been acquiesced in by reason of the tendency of our courts to discourage a multiplicity of suits. Whether it should be upheld or not, we are not called upon to decide in this case.

But we are clearly of the opinion that it was intended neither by the recent amendments to the Constitution nor by the statutes which have been passed in pursuance thereof, to confer jurisdiction upon this court to try a case on mandamus in which the act which is sought to be compelled may involve the determination of a doubtful question of fact. The machinery of the court is not adapted to the trial of such a cause. The Bill of Rights secures the right of trial by jury, and while the people doubtless could amend the Constitution so as to modify or limit the right, we do not think any modification was intended by the provision in the late amendments which authorized the Legislature to confer jurisdiction upon

this court to issue the writ of mandamus in certain specified cases. We think it was not intended that we should exercise that jurisdiction in any case, unless the officer was under a clear legal obligation to do the act, and the right to have it performed was not dependent upon the determination of any doubtful question of fact.

The plaintiffs in this case seek to compel the Commissioner of the General Land Office to cancel a patent issued nearly a half-century ago, and delivered to some person unknown, and now in the possession of an adverse claimant of the land which it purports to convey; and to issue another in its stead. The ground for the action is, that the Commissioner who issued the existing patent mistook the name in the certificate and wrote "Lucy" instead of "Leroy;" and that there was no such person as Lucy Wilkerson. The similarity of the two names when written by other than a clerical hand makes the allegation plausible. But the fact that some one took out the patent would indicate that as early as 1846 there was a claimant of the land under the patent as issued.

If the fact be as alleged, it is most probable that within any reasonable time after the patent issued it could have been clearly established. Now its proof, if proved at all, must rest upon doubtful presumptions. If a fact, the Commissioner who committed the error would probably have corrected it upon having his attention called to it; or if he had refused, it may be that he could then have been compelled to issue another patent. But the present officer, who stands removed nearly fifty years from the transaction, and knows nothing of the facts except as disclosed by the records of his office, occupies very different ground.

Laches may be a bar to a writ of mandamus. The State v. Kirby, 17 S. C., 563; Chum v. Trustees, 32 Ohio St., 236; The People v. Common Council, 78 N. Y., 56; The People v. Seneca Common Pleas, 2 Wend., 264; The People v. Delaware Common Pleas, 2 Wend., 256. And we have no doubt that this presents a clear case for the application of the doctrine. It is a sufficient reason for refusing the writ here applied for, that the plaintiffs have slept so long upon their rights that the facts have become obscured, and that so far as this court can see, the determination of the litigation would most probably require the decision of doubtful questions of fact. Upon this ground alone we deem it proper to dismiss the case without passing upon any other question presented by the exceptions and demurrers.

There may be a serious question whether in attempting to define our jurisdiction in mandamus suits the Legislature has sufficiently "specified the cases" in which we may grant the writ, as required by the amendment. While it would have been regular and more logical to determine that question in the first place, the result to the plaintiffs is the same, whether we should entertain the jurisdiction or not. We prefer to leave

the question open and say this much, so that our action may not be con-strued as a decision upon it.

The petition is dismissed.

*Dismissed.*

Delivered May 4, 1893.