## JAMES COULTRESS v. CITY OF SAN ANTONIO.

No. 2743. Decided October 27, 1915—June 21, 1916.

### 1.—Mandamus—Certified Question—Conflict of Decisions.

Mandamus will issue from the Supreme Court to require a Court of Civil Appeals to certify to it questions arising in a case reversed and remanded, on the ground that its decision conflicts with those of other Courts of Civil Appeals, only where the conflict is clear and the duty to certify correspondingly plain. (P. 152.)

### 2.—Same—What Constitutes Conflict.

The conflict in decisions which would require the Court of Civil Appeals to certify the question to the Supreme Court under article 1623, Rev. Stats., 1911, must be upon a question of law actually involved and determined, and such

that one decision would overrule the other if both were rendered by the same court. The conflict must be well defined; and apparent inconsistency in the principles announced or in the application of recognized principles is not sufficient. The rulings must be so far upon the same state of facts that the decision in one case is necessarily conclusive of the decision in the other.   (Pp. 153-155.)

### 3.—Same—Cases Discussed.

The rulings of the Court of Civil Appeals for the Fourth District in City of San Antonio v. Coultress, 169 S. W., 917, and those of the Fifth District in City of Paris v. Cabiness 44 Texas Civ. App., 587, and of the First District in City of Houston v. Alvers, 32 Texas Civ. App., 70 (as to the right of one claiming to be lawfully a city policeman to recover the emoluments of that office after an attempted removal from the position by city authorities, which was alleged to be irregular and unlawful under the charters and ordinances of the respective cities), are analyzed and held not to present such direct conflict as to justify the issuance of mandamus requiring the court first named to certify the questions determined by it to the Supreme Court.   (Pp. 155-165.)

#### ON MOTION FOR REHEARING.

### 4.—Mandamus—Practice—Rehearing.

On motion for rehearing in the Supreme Court of an application for mandamus to require the Court of Civil Appeals to certify a question on the ground of conflict in decisions, the court will not consider other rulings alleged to be in conflict but not made a ground for seeking the writ in the original application therefor.   (Pp. 166, 167.)

### 5.—Conflict in Rulings.

Mandamus will not issue to require a reversed and remanded case to be certified to the Supreme Court on the ground of conflict of its rulings with previous decisions by the same Court of Civil Appeals.   (P. 167.)

### 6.—Practice in Supreme Court—Rehearing.

On motion for rehearing on an application for mandamus refused the Supreme Court declined to consider equities of the applicant arising from allegation of fact not theretofore made.   (P. 167.)

Original application to the Supreme Court for writ of mandamus requiring the Court of Civil Appeals to certify questions on the ground of conflict in decisions.

*D. A. McAskill, Joseph Ryan,* and *Theodore E. Simmang,* for relator.

*Geo. R. Gillette* and *Robert G. Harris,* for respondents.

MR. JUSTICE HAWKINS delivered the opinions of the court.

This action grows out of City of San Antonio v. Coultress, 169 S. W., 918.   Therein the County Court for Civil Cases rendered judgment in favor of Coultress, but the Court of Civil Appeals for the Fourth Supreme Judicial District reversed that judgment and rendered judgment in favor of the city.

Thereupon, Coultress filed therein an application for a writ of error, which application we dismissed for want of jurisdiction, pursuant to the views of a majority of this court as enunciated in Cole v. State

ex rel. Cobolini, 106 Texas, 472, 170 S. W., 1036, the case having orig-inated in a county court.

Subsequently, by motion in said Court of Civil Appeals, Coultress sought to have that court certify to this court certain questions of law which, said motion urged, had been decided differently by other Courts of Civil Appeal of this State; but said motion was overruled, and those questions have not been certified.

Following said refusal to certify relator instituted here this original proceeding under article 1623, Revised Statutes, 1911, praying for a writ of mandamus directed to said Court of Civil Appeals, and the justices thereof, requiring them to certify, for our determination, those questions which, for convenience, may be divided, as follows:

(1) "Whether the petition in this case is good on general demurrer."

(2) "And, if appellee, under the allegations of said petition, was an officer under the State law, charter and ordinance of the City of San Antonio, regularly appointed and qualified."

(3) "And the further question: Whether, under the allegations of said petition, the removal of appellee (Coultress) by the city marshal, is in compliance with section 17 of the city's charter—providing that only the mayor can legally so remove, and, therefore, if it is material whether appellee was an officer or only an employee or servant of the city, in a suit for recovery of salary, so long as he was not removed by the mayor in accordance with said section 17."

As grounds for mandamus relator alleges that said decision of said Court of Civil Appeals in the Coultress case is in conflict with the decision of the Court of Civil Appeals for the Fifth District in City of Paris v. Cabiness, 44 Texas Civ. App., 587, 98 S. W., 925, and with the decision of the Court of Civil Appeals for the First District in City of Houston v. Albers, 32 Texas Civ. App., 70, 73 S. W., 1085.

The City of San Antonio has not answered, but the Chief Justice and the Associate Justices, respondents, answered, jointly, by general de-murrer and special exceptions, and by general and special denial of the existence of such conflict upon any question of law.

It is well settled, under our decisions, and generally, that unless the duty is plain mandamus will not lie. Glasscock v. Commissioner, 3 Texas, 51, and cases cited: Arberry v. Beavers, 6 Texas, 457, 55 Am. Dec., 791; Durrett v. Crosby, 28 Texas, 688; Tabor v. Commissioner, 29 Texas, 508; Texas Mex. Ry. Co. v. Jarvis, 80 Texas, 456, 15 S. W., 1089; Teat v. McGaughey, 85 Texas, 478, 22 S. W., 302; DePoyster v. Baker, 89 Texas, 155, 34 S. W., 106; Erp v. Robison, 155 S. W., 180, decided April 2, 1913, not yet officially reported [106 Texas, 143].

Assuming, in favor of relator, the sufficiency of his petition for man-damus, we come directly to the vital issue as to whether, within the meaning of article 1623, Revised Statutes, any such "conflict" really exists. If such conflict does exist mandamus should be awarded; other-wise the writ should be denied.

Article 1623 is as follows:

"Wherever, in any cause at any time pending in any of the Courts of Civil Appeals of the several supreme judicial districts of the State of Texas, any one of said courts may arrive at an opinion in the decision of any such cause that may be in conflict with the opinion heretofore rendered, or hereafter rendered, by some other Court of Civil Appeals in this State on any question of law, and such Court of Civil Appeals refuses to concur with the opinion so rendered by such other Court of Civil Appeals, it shall be the duty of such court failing to concur with the opinion in conflict with the opinion so arrived at by such court, through its clerk, to transmit the question of law, duly certified to, involved in the cause wherein said conflict of opinion has arisen, together with the record or transcript in such cause, to the Supreme Court of the State of Texas for adjudication by the Supreme Court."

Whatever difficulties may arise, in a particular instance, in applying this article of the statute, we regard its meaning and legal effect as plain and well settled. The sole duty which it imposes upon a Court of Civil Appeals arises only when a decision of that court upon a question of law, actually involved in a cause before it, is in direct conflict with the decision of another Court of Civil Appeals upon that very question of law, arising upon an issue actually involved in a cause before it,—the test being whether "one would operate to overrule the other in case they were both rendered by the same court."

As long ago as 1896, upon an application for a writ of error, in construing article 941, Revised Statutes, 1895, afterward article 1522, Revised Statutes, which was amended by Acts 1913, page 107, this court said:

"In this case the judgment of the District Court was reversed and the cause remanded. Although the cause is sent back with instructions, the decision of the Court of Civil Appeals does not settle the case; nor is it averred in the petition for the writ of error. But in order to show jurisdiction in this court it is alleged that the decision of the Court of Civil Appeals is in conflict with certain decisions of this court on two propositions announced in the opinion. We have examined the cases cited in support of the averment, and, while we find that there may be some apparent inconsistency between the propositions stated in the opinion in the present case and those announced in the cases referred to in the petition, we think that the present case is distinguishable from either of those cited, and that there is not that well defined conflict between them which is necessary to give this court jurisdiction of a remanded cause. Therefore, the application is dismissed for want of jurisdiction." Bassett v. Sherrod, 90 Texas, 32, 36 S. W., 400.

A few months afterward, in passing upon an application for writ of error, this court said:

"It is sought to give this court jurisdiction of the application under article 941, Revised Statutes, which reads as follows:

"'All causes shall be carried up to the Supreme Court by writs of

error upon final judgment, not on judgments reversing and remanding causes, except in the following cases, towit:  . . .

" '5.    Cases in which a Court of Civil Appeals overrules its own decisions or the decision of another Court of Civil Appeals or of the Supreme Court.'

"Under this statute the conflict between the decision of the court in question and that with which it is claimed to be in conflict must be of such a nature that one would operate to overrule the other in case they were both rendered by the same court.    In other words, the decisions must be based practically upon the same state of facts and announce antagonistic conclusions.    It is not sufficient to give jurisdiction that a Court of Civil Appeals may have misapplied a principle of law announced by a decision of another Court of Civil Appeals or of this court.    In the two cases cited as being in conflict with the decision in the present case, the question of waiver arose upon exceptions to pleading, and in the course of the opinion a general proposition was laid down upon that question which might be considered in the case presented by this application, but the facts of the case are so different that we do not consider the conflict to be such as under the statute gives us jurisdiction to grant a writ of error."    Sun Mutual Insurance Co. v. Roberts, 90 Texas, 78, 37 S. W., 311.

We think that the same rule of construction should be applied to said article 1623.    And in 1902, some five years after the two decisions last cited, this court did apply to that statute the same rule of construction which, previously, had been applied in the two cases mentioned, saying:

"We have held that in order to give this court jurisdiction of a reversed and remanded case on the ground of a conflict of decisions, there must be a well defined conflict (Bassett v. Sherrod, 90 Texas, 32); and we think the same rule should apply to the construction of the statute which requires a Court of Civil Appeals to certify a question upon which its opinion conflicts with that of another Court of Civil Appeals."    McCurdy v. Conner, 95 Texas, 246, 66 S. W., 664.

And during the same term this court denied a petition for mandamus upon the ground that the decision of the Court of Civil Appeals for the Fifth District, in Kidd v. Truett, County Attorney, to the effect that an election on prohibition of the sale of intoxicating liquors could not be held in a school district lying partly in a justice precinct in which prohibition had already been adopted did not present such "conflict" with certain previous decisions of another Court of Civil Appeals as to require such certification, saying:

"The cases relied upon by the relator are State v. Harvey [11 Texas Civ. App., 691], 33 S. W., 885, and Adams v. Kelley [17 Texas Civ. App., 479], 44 S. W., 530.    Both decisions were by the Court of Civil Appeals for the Second Supreme Judicial District.    In the former it was held, that where an election had been held in the entire county, and as a result thereof prohibition had been adopted, another election

in a precinct of the county, while prohibition was still in force in the entire county, was invalid. In the latter the ruling was in principle the same. There it was held that after an election under the local option law held for a county had resulted in favor of prohibition, the Commissioners Court could not be compelled to order an election for a city in the county, although the result of the county election had not been declared. Clearly the decisions in these two cases, and the decision of the Court of Civil Appeals for the Fifth District, were upon very different questions. Because a local option election can not be held in a subdivision of a large territory in which prohibition already exists, is no conclusive argument against the validity of such an election in a certain district in a part of which only the sale of intoxicating liquors is already prohibited. Where the decision in a case is not necessarily conclusive of the decision in another, there can be no conflict." Kidd v. Rainey, 95 Texas, 556, 68 S. W., 507.

Again, in 1908, this court said:

"When one court decides a question one way, and another court makes a contrary ruling upon the same question, there is a conflict. Hence, unless the question be the same, there can be no conflict. But counsel have labored in argument strenuously to show that the principles announced in the cases cited necessarily lead to a conclusion adverse to that arrived at by the Court of Civil Appeals in the present case. But we do not think that such is the fact. Besides we are of opinion that the conflict must be upon the very question decided and not in the reasoning by which the conclusion is reached." McKay v. Conner, 101 Texas, 313, 107 S. W., 45.

See, also, Railway Co. v. Willson, 101 Texas, 269, 106 S. W., 325; Texas & P. Ry. Co. v. Conner, 100 Texas, 407, 100 S. W., 367; Welch v. Weiss, 99 Texas, 356, 90 S. W., 160; Elder Dempster & Co. v. St. Louis S. W. Ry. Co., 105 Texas, 628, 154 S. W., 977; Booker-Jones Oil Co. v. Refining Co., 132 S. W., 815.

Applying the foregoing established principles, which so long and so often have been laid down by this court, what, if any, precise question of law which was decided in the Coultress case was decided differently in the Cabiness case or in the Albers case, supra?

Said original suit of Coultress was for salary and allowance for a period of time subsequent to his attempted discharge, to which amounts he claimed to be entitled as a *de jure* officer. His contention throughout that such was his statuts appears to be based upon what may be treated as two counts:

1. That the police force, embracing the office of patrolman, or policeman, was duly established by the city council, by ordinance, in compliance with the requirements of the special city charter, and that he was duly appointed to that office, took the oath, gave bond, and entered upon the discharge of the duties thereof.

2. That after his discharge, and after his name was dropped from the payroll, the city council continued to make, for the support of the

police force generally, although not for any particular office or person, monthly appropriations, in lump sums, of various amounts, which appropriations were based upon the payrolls, and that, about one month after he was discharged and his name dropped from the payroll, the city council made an appropriation, in a lump sum, to pay for a new uniform for each member of the police department, said appropriation being on the basis of $22.50 each for patrolmen, or policemen, therein. His petition alleged tender of his services from and after his discharge, although he did not thereafter actually serve upon the force.

The following extracts give the gist of the opinion of the Court of Civil Appeals in that case:

"Before the emoluments of an office may be recovered, it is necessary that the claimant therefor should show: First, that the office has been created and is in existence; and, second, his legal right thereto. He must show that he is an officer *de jure*. . . .

"Article II of the charter deals with the powers and duties of the city council, and the first section thereunder says, in part:

" 'Sec. 51. The city council . . . shall have power, by ordinance:'

" 'Sec. 65. To establish a police force and regulate the same. . . .'

" 'Sec. 56. To create any office or agent deemed necessary for the good government and interest of the city. . . .'

"Turn, then, back to section 20, and it reads:

" 'The city council or a majority thereof may act by resolution in all cases except where an ordinance is by this Act required. . . .'

" 'It is clearly stated that the council shall have power by ordinance to establish its police force. That means, and can only mean, that the council has that power when exercised in the manner prescribed, which is by ordinance. Section 20, giving the council power to act by resolution in all cases not otherwise required to be done by ordinance, must mean that where an ordinance is required a resolution would be insufficient. The ordinance of the council of date March 2, 1903, wherein it was ordained that, "the police force of the City of San Antonio shall consist of one chief marshal and two assistant marshals, one police matron, and such detectives and mounted and unmounted patrolmen as the mayor and city council may deem necessary," did not create the office of patrolman or policeman. . . . The only limitation is such number as the mayor and city council "may deem proper." The only logical result or inference from this is that the mayor may appoint, and the council, by a simple resolution ratifying the same, may confirm, as many patrolmen as may be desired; and this in the face of the charter provision that it shall be done by ordinance.' "

In the opinion overruling Coultress' motion for a rehearing that court considered the contention that the above mentioned ordinance of March 2, 1903, and an earlier ordinance which provided that "the police force of the City of San Antonio will consist of the following grades: City marshal (ex-officio chief of police), assistant marshal or marshals

and patrolmen," both of which ordinances were continued in force by the special charter of 1903, were not founded upon it, but upon the city's charter of 1870, and upon that point said:

"But these ordinances would be in conflict with the charter of 1870, almost, if not entirely, as much as with the present charter or the charter of 1903," because it found that the charter of 1870 likewise required that the power of the city council "to establish, regulate and support night watch and police, and define the duties thereof," should be exercised "by ordinance" only.

And the court added: "So, whether we look at the proposition from the standpoint of the 1870 charter or the present one, there is practically no difference. The whole matter summed up is, that the department must be established by an ordinance, and the office of policeman can not be created by resolution."

In passing upon what we treat as the second count in plaintiff's petition, relating to appropriations, the court, in its original opinion, said:

"But the charter of the city was granted for the public good and the powers of the council are defined in and circumscribed by that document. The city can only act as it is permitted to act in that legislative grant. That instrument says that the council shall act by ordinance in matters of this kind and this it has not done. The doctrine of estoppel and ratification can not aid that which never had a legal existence."

Briefly stated, the material holdings of that court were:

(1) That neither the police force nor the office of patrolman, or policeman, had been created by the city council, "by ordinance," in compliance with the mandatory requirements of the city's special charter, and, consequently, Coultress' appointment as patrolman, or policeman, made by the mayor, even when confirmed, according to custom in that city, as it was, by the city council, in the absence of a valid ordinance defining and limiting the number of patrolmen, or policemen, was invalid; wherefore, Coultress was never, *de jure,* a patrolman, or policeman, of said city, and, therefore, was not entitled to recover compensation covering salary and allowance for a period of time during which he was not actually engaged in the performance of the duties of such patrolman, or policeman.

(2) The fact that, after Coultress was discharged and his name dropped from the payroll, the city council continued to make monthly, in lump sums, in varying amounts, the usual appropriations for the support of the police department, but without making any specific appropriation for him, or for any particular office or person, would not control Coultress' status or establish his claim for compensation.

Really, the principal question of law there decided was this: Was that portion of the ordinance which relates to patrolmen, or policemen, in compliance with the requirements of the city charter, and, therefore, valid and effectual to create that office, although it failed to fix the number of patrolmen, or policemen, but left the number to be deter-

mined otherwise than "by ordinance"? And that part of the decision goes no further than the determination of the legal effect or sufficiency of the ordinance for that purpose, holding, as a consequence of the decision that it was not legally sufficient therefor, that Coultress was not a *de jure* officer, and, therefore, could not recover.

It is true that, incidentally, and as indicated by the last foregoing excerpt from its original opinion, the Court of Civil Appeals seems to have considered and treated as insufficient to support Coultress' cause of action, under what we treat as his second count, his allegations relative to appropriations; but upon that phase of the case it should be noted and remembered, (a) that his petition in the trial court, as appears from the record before us, did not even allege that his name appeared upon any of the payrolls upon which such appropriations were made, but, on the contrary, as pointed out in the opinion on rehearing, did allege that his name was dropped from the payrolls at date of his discharge, and (b) that said holding upon said second count was evidently based upon the finding of fact set out in the original opinion that Coultress' name was upon the payrolls when said appropriations were made, and that after said finding of fact was corrected on rehearing that court seems not to have considered that phase of plaintiff's case as of any further consequence, making no reference to it in the opinion on motion for rehearing. Under these circumstances, it seems that there is little, if any, necessity for further considering the holding on said second count as a possible basis of conflict, even if it be treated as fairly embraced by said question 2.

An essential difference between the decision in the Coultress case and each of the other two decisions mentioned by relator as a basis of "conflict" lies in the fact that neither of the above mentioned issues or holdings in the Coultress case,—one relating to the validity, or at least the sufficiency, of a portion of a particular ordinance affecting the creation of the office when tested by the peculiar provisions of a particular special city charter, and the other relating to the effect of appropriations made by the city council under certain peculiar circumstances,—was involved in either of said other decisions. It seems clear, therefore, that there was no statutory conflict between the Coultress decision and either of the other decisions.

And here it seems we might properly suspend consideration of the three decisions and deny the writ sought. However, we consider it advisable to consider and treat further, and somewhat in detail, the contentions of relator, and certain phases of each of said other decisions.

From the report of the Cabiness case, it appears that the general demurrer was overruled by the trial court, but the report of the Albers case does not state what, if any, action was taken by the trial court on the general demurrer; however, we will assume herein that in each instance, as claimed by relator, it was overruled. On appeal of the Cabiness case it was distinctly held that the trial court did not err in overruling it, but if that point was decided on appeal in the Albers

case that fact is not disclosed by the report. It is plain that, if it was not, on that point at least there was no conflict between the decision in the Coultress case and that in the Albers case; but again will we assume that the claim of relator is correct, and that in the Albers case, also, it was held, on appeal, that the trial court did not err in over-ruling the general demurrer.

The three questions will be considered seriatim:

*First.* The alleged conflict involved in question (1), above, relates solely to the sufficiency of the petitions when tested by general demurrer. Applied in comparing the Coultress decision with the Cabiness decision, that question relates to petitions under widely variant charter provisions which, in each case, controlled the decision; wherefore, the cases presented by the petitions being essentially different, the opposite holdings as to the sufficiency of the respective petitions on the issue whether, as a consequence, plaintiff was or was not a *de jure* officer, can not fairly be considered a statutory "conflict."

The charter in the Coultress case was one of which by its terms the courts are required to take judicial notice and was pleaded in plaintiff's petition. The charter in the Cabiness case, it seems, was one of which the courts are not required to take judicial notice, but the report does not state that it was not specially pleaded in plaintiff's petition, and does show that the defendant pleaded certain sections of that charter, and that both the trial and the appellate court held said petition good against a general demurrer. Under these circumstances, we feel justified in assuming herein, as we do, that, along with plaintiff's petition, the Paris charter was properly considered by both courts in the Cabiness case, as the San Antonio charter undoubtedly was in the Coultress case.

The nature of the petition in the Coultress case we have sufficiently indicated. In the Cabiness case, as in the Coultress case, the suit was, indeed, by one claiming to be a policeman *de jure,* for compensation for a period of time subsequent to his attempted discharge, and there; as in the Coultress case, the principal question of law involved was as to whether plaintiff had ever become a policeman *de jure;* but there that issue hung, not, as in the Coultress case, upon the sufficiency or insufficiency of an ordinance under the terms of a special charter requiring that the establishment of the police force by the city should be "by ordinance," but upon the construction to be given to a provision of a different charter, which might justly be construed and treated as creating the office of policeman and which expressly conferred upon the city council power and authority "to appoint watchmen and policemen, and prescribe their duties and powers and compensation," without expressly providing that such powers should be exercised by ordinance,—which quoted provision was held to be self-executing, requiring no resolution or ordinance of the city council to make it effective; from which analysis it clearly appears that the common question as to whether plaintiff ever became an officer *de jure* depended, in

the respective cases, upon essentially different facts; in consequence of which difference the decisions in those cases upon that point, although announcing diametrically opposite conclusions as to the sufficiency of otherwise substantially similar petitions, do not present a "conflict" within contemplation of said article 1623.

Turning, under question 1, to the Albers case, we find:

The opinion in that case embodies no specific holding as to the sufficiency or effectiveness of any ordinance creating or attempting to create the office of policeman of the City of Houston. Nothing in the report of the case indicates that it was therein contended that any ordinance failed to comply with charter requirements. The decision therein justly may be said to have assumed the legal existence of that office, and, evidently, it was merely as a logical consequence of that assumption that it was held that, under the plaintiff's allegations, his tenure of office was valid, entitling him as a *de jure* officer to his full term, which, upon a construction of the charter and the applicable provisions of our State Constitution, was held to be "during efficient service and good behavior, for two years," and no longer; and it seems to have been in consequence of that latter holding, coupled with the fact that "there was neither allegation nor proof that he was ever reappointed to such office" that it was held that with the expiration of that original term Albers ceased to be a policeman *de jure,* and that thereupon the liability of the city for his salary as such *de jure* officer terminated.

And, under the facts of that case, as disclosed by said opinion, Albers having been paid in full for all services rendered during said two years and afterwards down to date of his discharge, it was really immaterial, on appeal, whether Albers, during that period, had been an officer *de jure* or an officer *de facto;* and inasmuch as he had not been reappointed after the expiration of his original term, it was likewise immaterial whether that office had any legal existence since, in any event, after the expiration of that term he was, therefore, not an officer *de jure,* and, consequently, was not entitled to recover for services not actually rendered.

From a comparison of the opinion in the Albers case with that in the Coultress case, and although in each instance the number of policemen had not been fixed by charter or ordinance, and in each instance the suit was by one claiming to be a policeman *de jure* for salary for a period of time subsequent to his discharge (the Albers suit being also for salary covering a period of suspension embracing fifteen days prior to such discharge but subsequent to expiration of his original two years' term of office), it seems too clear for argument that between them there is no statutory conflict upon any holding by the Court of Civil Appeals upon the general demurrer.

*Second.* Question 2 may be treated as including both counts of plaintiff's petition in the Coultress case, the first as presenting the theory of a *de jure* status resting upon allegations of compliance with all requirements of law, including charter and ordinances, coupled with

regular appointment and qualification and with service in office, and the second as presenting the theory of a *de jure* status resting upon allegations of appointment and qualification and service as policeman down to date of discharge, coupled with subsequent recognition by the city, through its city council, or his status as a policeman, even though it be held that a strict compliance with law and charter provisions, including the establishment of the police force by the city council by an ordinance fixing its number, was lacking.

Upon the first branch of question 2 our views have been sufficiently expressed above in treating question 1, and a portion of what we said there applies to the second branch thereof.

The second branch of that question rests, apparently, upon the idea that plaintiff's status was affected by action of the city authorities recognizing and treating him as a *de jure* officer.

Applying it to the Cabiness case, we are unable to find that plaintiff there contended, or that it was held, that even though it should be decided that the office of policeman had not been properly created, or that his appointment was invalid, the other facts of the case were such as to constitute him a policeman *de jure* or entitle him to recover for services which he never rendered.

In that opinion, referring to Cabiness, the court did, indeed, say:

"He was recognized under the appointment made, and his salary paid by appellant for three months without objection, and without any question being raised concerning the legality of his appointment, so far as disclosed by the record. Under these facts, it seems clear that he became an officer *de jure* and entitled to hold the office to which he had been appointed for two years unless lawfully ousted."

But that portion can not, fairly, be wrenched from its place in the context and considered separately as a basis of conflict in decisions. In considering the meaning and force of said excerpt, it must be remembered that the court was then dealing with the third assignment of error, which complained of the action of the trial court in sustaining special exceptions to and striking out portions of defendant's original answer, which set up the following defenses:

(a)   That the city council had never passed any ordinance or resolution making effective the charter powers relating to the creation of a police department or the appointment of policemen, and that neither the term of office nor the duties of policemen had been prescribed, and that policemen were subject to removal at will and without notice.

(b)   That, pursuant to said charter, the city council had adopted for its government rules which had been disregarded in the appointment of plaintiff to said office.

(c)   That, in consideration of his appointment as policeman, plaintiff contracted with defendant that either the city marshal or the city council might discharge plaintiff, at any time, with or without notice or cause.

The actual viewpoint and conclusions of that court as to the merits of said pleas are more clearly shown as follows:

"We are of the opinion, however, that neither of the alleged grounds of defense mentioned constituted any sufficient reason for denying to appellee a recovery. Section 27 of appellant's charter conferred upon its city council the power and authority 'to appoint watchmen and policemen, and prescribe their duties and powers and compensation.' This provision of the charter was self-executing, and required no resolution or ordinance of the city council to make it effective. Nor do we think mere irregularities in the proceedings by which appellee was appointed, if any, can be taken advantage of by the city and urged as distinct grounds upon which to defeat his otherwise right to recover the salary incident to said office. Besides, it does not appear that his discharge was based upon any such ground. He qualified and entered upon the discharge of his duties. He was recognized under the appointmade made, and his salary paid by appellant for three months without objection, and without any question being raised concerning the legality of his appointment so far as disclosed by the record. Under these facts it seems clear that he became an officer *de jure*, and entitled to hold the office to which he had been appointed for two years, unless lawfully ousted"; citing cases.

Undue stress should not be laid upon the statement that Cabiness was recognized under his appointment as a policeman and received his salary for three months without objection or question concerning the legality of his appointment. Evidently it was made in disposing of the city's contention (b) above, under the third assignment, which contention, in effect, assailed Cabiness' status as a *de jure* officer upon the ground that the irregularities there urged rendered his election to the office of policeman invalid, even though it should be held that the office had been duly created or recognized by the charter, that instrument being self-executing and no ordinance being necessary to the existence of that office. And it was probably with that thought in mind, as well as with reference to the duration of Cabiness' term as a *de jure* officer, that the court cited City of Houston v. Estes, 35 Texas Civ. App., 99, 79 S. W., 848, wherein Estes was held to have been an officer *de jure* despite certain irregularities in the giving of a bond, concerning which complaint was not seasonably made. In other words, it seems to us that the immediate purpose of the court there was merely to apply to said plea, (b) concerning irregularities in the election or appointment of Cabiness, the principle which, in that cited case, had been applied to the qualification of Estes, that principle being that where the office exists, legally, such mere irregularities, when acquiesced in, will not reduce to the status of a merely *de facto* officer the incumbent who, but for such irregularities, would be a *de jure* officer.

Furthermore, in considering the effect of the language found in said first excerpt, it should be constantly borne in mind that it followed the holding upon the city's contention (a), above, to the effect that

the charter provision relating to the appointment of policemen was
self-executing, requiring no resolution or ordinance by the city council
to make it effective—a holding which, under the uncontradicted evi-
dence, resulted in the further conclusions and holdings that "appellee
was duly appointed or elected policeman . . . on the 27th day of
April, 1903, by its city council and . . . qualified,"—which hold-
ings together, and without regard to whether the city did or did not
pay his salary for three months, constituted a reasonable and adequate
predicate for the ultimate conclusion there announced by the court that,
under the facts of the case, Cabiness clearly "became an officer *de jure*,
and entitled to hold the office to which he had been appointed for two
years, unless lawfully ousted." Certainly the words "became an officer
*de jure*" would seem strangely inappropriate in defining the status of
the incumbent of an alleged office which had no legal existence, and
the words, "the office to which he had been appointed" would have been
palpably inappropriate in that connection, and those expressions would
hardly have been used by that learned court had its purpose been to
there declare and hold that, in the absence of the legal existence of the
office and an appointment thereto which was at least substantially
effectual although somewhat irregular, the recited facts that he was
recognized and paid by the city as a policeman would constitute him
an officer *de jure*, and entitle him to the emoluments of that office
during its term.

Plainly, we conclude, the legal effect of the above quoted portion of
said opinion, treating said third assignment and embracing said first
excerpt, is to hold, merely (a) that the three defenses therein men-
tioned had not been abandoned by failure to replead them and were
properly up for review, the city having seasonably made and duly
brought up its exceptions to the action of the trial court in sustaining
special exceptions to said defenses, but (b) that none of the three pleas
was meritorious. The citation of cases was such, we think, as to sup-
port our conclusion.

Consequently, so far as we have discovered, the decision in the Cabi-
ness case involves no holding whatever upon the point embraced by the
second branch of question 2; wherefore, it seems impossible for "con-
flict" to exist between that decision and that portion of the opinion in
the Coultress case which we have treated as involving that point.

Nor does this second branch of question 2 seem to have been involved
in the Albers case except in connection with the action of the city
council upon Albers' appeal from the order discharging him, whereby
that body "determined, by a vote of 10 to 2, that plaintiff had been
wrongfully discharged from the service of the city, and it was recom-
mended that he be reinstated in his former position and be paid in full
for the time lost by him." In that connection it must be remembered
that Albers' allegations relating to his appointment and confirmation,
taking the oath of office, giving bond and approval thereof, referred,
primarily, to his original term of office, which was held to be two years,

and that upon the view that, under the charter and ordinances, there was no succession in the office of policeman pursuant to which he might continue in office until his successor qualified, coupled with the finding of fact that he was never reappointed, it was held that after the expiration of his term of office he was no longer an officer *de jure.*

Upon the effect, if any, of the above mentioned action of the city council concerning Albers' discharge, no specific holding seems to have been made; but the plain purport of the decision seems to be that such action by the council, whether considered separately or in conjunction with the antecedent facts and circumstances of the case, including his declaredly valid appointment, qualification and service for two years, was insufficient to make his status, after the expiration of that term, that of a *de jure* officer. Under the opinion in the Albers case there is certainly no room to contend that therein it was held that action by the city authorities, even when considered in connection with the other facts of this case, constituted him an officer *de jure,* after expiration of the two years; hence, upon that feature, there is no conflict between that decision and the decision in the Coultress case. On the contrary, and even upon relator's assumption that Coultress' petition alleged and that the facts showed the making by the city council, after date of his discharge, of specific appropriations for his salary, an assumption directly in the face of the final findings of fact, the effect of the decision in the Coultress case that, nevertheless, he was not, thereby, nor in connection with the other facts of that case, including his attempted appointment and qualification and service, constituted an officer *de jure;* and that holding as to the legal effect of the facts and circumstances upon Coultress' status during the period of time covered by his claim for compensation was not in conflict, but was in strict harmony, with the decision upon the corresponding feature of the Albers case.

*Third.* Coming, finally, to question 3, we find in the Coultress appeal no holding on any question involving the legality of plaintiff's discharge common to that in either of the other two cases mentioned by relator; consequently, there can be no conflict thereon. Question 3, as framed, involves, or assumes, a construction in the Coultress case of the legal effect of section 17 of the San Antonio special city charter. Manifestly, that question of construction was not involved in the Cabiness case, which arose under the Paris charter, nor in the Albers case, which arose under the Houston charter, neither of which is shown to have contained an identical or even a similar provision. And it seems that the opinion in the Coultress case does not even attempt to construe said section 17; and, indeed, under the view which prevailed in that decision, and under the holding there made, which, as we have seen, was to the effect that Coultress never became an officer *de jure,* the question of whether his attempted discharge was legal or not became and was wholly immaterial in that cause, just as the corresponding question was held to be immaterial in the Albers case, the court having there held, as was held in the Coultress case, that plaintiff

was not an officer *de jure* during the period of time covered by his claim for compensation, the plaintiff in each instance having received full pay for all services actually rendered. Indeed, in each of those cases, under the holdings made therein, respectively, any decision or holding therein as to the legality or illegality of plaintiff's discharge would have been *dictum,* upon which conflict under said article 1623 could not be predicated. In the Albers case said holding of immateriality was the only one relating to discharge.

The appeal in the Cabiness case involved three, and only three, issues relating to plaintiff's discharge: (a) discharge pursuant to his said contract with the city therefor, which was held void as against public policy; (b) discharge by the city marshal, which the court found to have been without a hearing or trial, and held to have been without authority of law; (c) an incidental question as to whether the city had notice that plaintiff had been discharged by its city marshal, upon which it was held that the city had sufficient notice and adopted and ratified said act of discharge. Evidently none of those three questions relating to discharge was involved in the Coultress case; consequently, there was no conflict thereon.

We deem it proper to suggest that in the event of the filing of such actions in the future the time of this court may be conserved by more definite and specific statements by relators, alleging conflict.

Because, in our opinion, relator's claim of conflict is without merit, the writ of mandamus is denied.

Opinion delivered October 27, 1915.

### ON MOTION FOR REHEARING.

In this action, for mandamus only, we are not called upon to decide, and have not undertaken to determine, and do not decide, whether any of the decisions of the several Courts of Civil Appeals in City of Houston v. Albers, 32 Texas Civ. App., 70, 73 S. W., 1085; City of Paris v. Cabiness, 44 Texas Civ. App., 587, 98 S. W., 925, and City of San Antonio v. Coultress, 169 S. W., 918, was correct.

The real and only issue before us is, does the decision in said Coultress case conflict, upon any question of law, with either of said other decisions? And that defines the full extent of our jurisdiction in the premises.

Whether the petition in the last mentioned case was substantially like the petition in both or either of the two other cases is not the controlling inquiry. In determining the issue involved we must consider the cases as a whole, including the city charters, the ordinances in issue, if any, and the facts, and not simply the petitions only.

Upon consideration, accordingly, of relator's motion and supplemental motion for a rehearing we find no statutory conflict in the decisions mentioned, and we adhere to our former views denying the writ.

Relator insists that the provisions of the Paris charter relating to the establishment of the police force (Special Laws of 1889, p. 112,

9 Gammel, p. 1347) were to the same legal effect as the corresponding provisions of the San Antonio charter, and calls our attention to section 24 of the Paris charter, which section seems not to have been quoted or mentioned by the Court of Civil Appeals in the Cabiness case, or by us in our original opinion in this case.

Whether said provisions of said two charters are to the same legal effect, and whether the Paris charter required that the establishment of the police force should be "by ordinance," are questions which, perhaps, are immaterial in this action; but we incline to the view that the Paris charter did not so require, and, in any event, we decline to hold herein that the decision of the Court of Civil Appeals at Dallas, to that effect, in the Cabiness case, was erroneous.

Whatever may be the proper construction of the applicable provisions of the Paris charter and of the San Antonio charter, respectively, the fact remains that the two Courts of Civil Appeals construed them differently, one holding that the San Antonio charter did, and the other that the Paris charter did not, require that the establishment of the police force should be by ordinance of the city; from which it is evident that the fundamental difference between those decisions was as to the legal effect of the charters, respectively, rather than as to the mere sufficiency of petitions.

Relator's petition for mandamus does not specifically allege conflict in constructions placed upon similar charters, or conflict as to the sufficiency of similar city ordinances under similar charters, but does, in effect, allege conflict as to the sufficiency of what he alleges to be substantially similar petitions; and the questions which we are asked to have certified were framed accordingly.

Moreover, in the San Antonio case Coultress sought to have his appointment upheld by virtue of an ordinance which the Court of Civil Appeals held to be not in compliance with charter requirements; but the Cabiness case, under the Paris charter, did not involve, on appeal, any issue or decision concerning the sufficiency of any city ordinance, none creating a police force, or the office of policemen, having been enacted by the city council, so far as shown, and, likewise, the Albers case, under the Houston charter, did not present, upon appeal, any issue or express decision as to the sufficiency of any city ordinance.

The supplemental motion avers that, whereas the Court of Civil Appeals in said Coultress case held the city ordinance relied upon insufficient in that it did not definitely fix the number of policemen, that same court, "in several lengthy and carefully considered opinions held the same ordinance valid and permitted the policemen to recover their money under identical circumstances with those of Coultress. See the following cases, towit: City of San Antonio v. Serna, 45 Texas Civ. App., 341, 99 S. W., 875; City of San Antonio v. Beck, 101 S. W., 263; City of San Antonio v. Tobin, 101 S. W., 269; City of San Antonio v. Bodeman, 163 S. W., 1043."

Even though it should be assumed or found that said averment cor-

rectly reflects the effect of said four decisions (a point upon which we express no opinion), still, for two reasons, neither of them can now be considered, in this action, as grounds of "conflict":

(1)  They were not presented in relator's petition for mandamus.

Upon motion for rehearing in a suit for mandamus to require certification, under Revised Statutes, article 1623, by a Court of Civil Appeals, upon the ground of conflict in decisions, this court will not consider, as a basis of such conflict, any decision not mentioned in the petition for mandamus.

(2)  Said four decisions are by the same Court of Civil Appeals which rendered said decision in the Coultress case, and not by "some other Court of Civil Appeals." Art. 1623, Rev. Stats.; Smith v. Connor, 98 Texas, 434, 84 S. W., 815.

Very candidly relator's counsel concede that reversal by a Court of Civil Appeals of one or more of its own former decisions upon a question of law does not constitute "conflict" under our statute; but, in that connection, and for the sake of equity, we are asked to resolve in favor of relator any doubt which we may entertain as to the existence of statutory conflict charged by the petition for mandamus. We have no such doubt; and, as stated in our original opinion, the writ of mandamus issues, in such matters, only where the conflict is clear and the duty of the Court of Civil Appeals to certify the question of law involved is correspondingly plain.

Said supplemental motion avers, also, as part of relator's plea for equity, that when his petition in said Coultress case was filed in the trial court, and, in addition to the ordinance which in that case was held insufficient, there existed certain city ordinances of dates December 4, 1905; August 5, 1907, and September 3, 1912, fixing a definite number of policemen, which relator now indicates he would have pleaded had his case been remanded by the Court of Civil Appeals to the trial court. Manifestly this new and extraneous matter can not be considered by us herein for any purpose. Whatever difficulties, or equities, if any, may inhere in the situation, we can not deal with them in this action. The motions are overruled.

Opinion delivered June 21, 1916.